S92A0413. JONES et al. v. DOUGLAS COUNTY et al.
(418 SE2d 19)

BELL, Presiding Justice.

This appeal presents issues concerning the validity of ordinances and resolutions pertaining to the establishment of street light districts in Douglas County, Georgia, pursuant to the authority of 1983 Ga. Const., Art. IX, Sec. II, Par. VI.[1] The appeal also presents issues concerning class certification. As we shall describe in this opinion, we conclude that the trial court erred in granting summary judgment against, and in denying summary judgment in favor of, the appellants on their claim for a declaration that the purported establishment by the Douglas County Board of Commissioners (the Board) of a Street Light District (SLD) and subsequently of a Street Light Tax District (SLTD) in appellants' residential subdivision, the Trail Creek Subdivision,[2] is invalid because appellants were denied their right under the former Douglas County Street Light Ordinance, Douglas County Ordinances §§ 55-1101 to 55-1116 (hereafter, the Street Light Ordi-

---

[1] Art. IX, Sec. II, Par. VI provides that

[a]s hereinafter provided in this Paragraph, special districts may be created for the provision of local government services within such district; and fees, assessments, and taxes may be levied and collected within such districts to pay, wholly or partially, the cost of providing such services therein and to construct and maintain facilities therefor. *Such special districts may be created and fees, assessments, or taxes may be levied and collected therein by any one or more of the following methods:*

(a) By general law which directly creates the districts.

(b) By general law which requires the creation of districts under conditions specified by such general law.

(c) *By municipal or county ordinance or resolution,* except that no such ordinance or resolution may supersede a law enacted by the General Assembly pursuant to subparagraphs (a) or (b) of this Paragraph. [Emphasis supplied.]

[2] Appellants are a married couple who own a lot and residential dwelling in Trail Creek Subdivision.

nance), to notice of the public hearing at which the SLD was established. We further conclude that the trial court did not err in denying appellants' motion for class certification.

In 1985 the Board enacted the Street Light Ordinance, which established procedures whereby SLDs could be created under the authority of Art. IX, Sec. II, Par. VI. One section, § 55-1107, prescribed that lot owners within a geographical area such as a residential subdivision could petition the Board to create such districts:

> (a) Any lot owner in any unincorporated area of Douglas County may present a request for the creation of a street light district to the County Engineer. Upon receipt of the request, the County Engineer shall determine the appropriate boundaries for a street lighting district which will serve the lot owner presenting the request and neighboring lot owners. The County Engineer shall then prepare a plat showing this proposed street lighting district, and a petition for the creation of the proposed street lighting district shall then be circulated among the lot owners in the proposed district. If seventy-five (75%) percent of the lot owners in the proposed district sign the petition for the creation of a street lighting district, the petition shall be presented to the Douglas County Board of Commissioners. The Board of Commissioners shall conduct a public hearing for the purpose of determining whether or not to create the proposed street lighting district, giving consideration to safety and economic factors in making such determination. *Unless one hundred (100%) percent of the lot owners have signed the petition, the public hearing shall be advertised one (1) time in the official organ of Douglas County, Georgia; and signs shall be posted in the proposed street lighting district giving notice of the hearing, at least ten (10) days before the public hearing.* The number and size of the signs shall be such as is required by the Douglas County Zoning Ordinance for a request to rezone property.

> (b) The petition for creation of the proposed street lighting district must be returned to the County Engineer within ninety (90) days after it is obtained from his office. *The County Engineer, in his sole discretion, will verify the signatures on the petition prior to advertising the public hearing.* [Emphasis supplied.]

After the enactment of the Street Light Ordinance, a petition to create an SLD in the Trail Creek Subdivision (Trail Creek) was re-

turned to the County Engineer, ostensibly with the signatures of 100 percent of the lot owners in Trail Creek. Pursuant to the language of § 55-1107 (a) that permitted a public hearing without "advertising"[3] if 100 percent of the lot owners signed the petition, the Board conducted a hearing in June 1985 and voted to designate Trail Creek as an SLD.[4] Street lights were installed and biannual assessments were sent to appellants, but they never paid any of the assessments.

It appears that at some point the Douglas County Street Light Ordinance, Douglas County Ordinances §§ 55-1101 to 55-1116, was redesignated as Douglas County Code Chap. 14, Art. II, §§ 14-20 to 14-35. In 1990 the Board revised the Street Light Ordinance by replacing the assessments for street lights with an annual ad valorem tax, and by converting the existing SLDs into SLTDs, § 14-21.[5] By a separate resolution the Board levied a $42 ad valorem tax for street light services on "each lot or lot resident within each Street Light Tax District." Notice was sent to appellants of an ad valorem tax for 1990 on their Trail Creek lot and dwelling, which included the $42 SLTD tax. Appellants tendered a tax payment in the amount of their tax bill less the $42, and when that tender was refused they filed suit in Douglas Superior Court against appellees. As amended, appellants' complaint indicated that they sought to assert a class action for a declaration that the street light ordinance in both its 1985 and 1990 ver-

---

[3] Subsection (b) used the term "advertising," whereas Subsection (a) referred to advertising in the official organ *and* to posting signs in the proposed SLD. For purposes of this opinion, we assume that the term "advertising" in Subsection (b) subsumed both the advertising and sign posting required in Subsection (a).

[4] The nature of the Board's action is disputed. The action of the Board is reflected in the minutes of the Board hearing as follows:

2. Designation of Trail Creek Subdivision as Street Light District.

Raymond [sic] explained that under the ordinance 75% participation or less has to be advertised for public hearing. This was 100% participation, so it is not required to be advertised. He asked, however, if anyone was in disagreement with street lights in Trail Creek Subdivision.

CHAIRMAN MAURER MADE A MOTION TO DESIGNATE TRAIL CREEK SUBDIVISION AS A STREET LIGHT DISTRICT.

COMMISSIONER TIPPENS SECONDED THE MOTION.

ALL VOTED IN APPROVAL.

Appellants contend that the vote was neither an ordinance nor a resolution, and hence did not comply with the requirement of Art. IX, Sec. II, Par. VI (c) that special districts be created "[b]y municipal or county ordinance or resolution," but we find that the action of the Board constituted a "resolution" within the meaning of the constitutional requirement, see *City of Ludowici v. Brown*, 249 Ga. 857 (295 SE2d 90) (1982).

[5] As revised, § 14-21 provided that

(a) There [are] created hereby special tax districts which shall be known as street light tax districts. . . . *Existing street light districts shall become street light tax districts upon the enactment of the legislation from which this section derived,* and new street light tax districts shall be created upon application or proper petition and approval of the board of commissioners as provided hereinafter. [Emphasis supplied.]

sions was unconstitutional; a declaration that appellees' actions under color of the two ordinances were illegal; an order for the return of money collected under the two ordinances;[6] and attorney fees. The parties filed cross-motions for summary judgment, and appellants also moved to certify a class of plaintiffs. As amended, appellants' motion for certification specified a proposed class of

> [a]ll individuals and entities who own real property in Douglas County and have been assessed an annual charge or tax for street lights during the years 1985 through 1990. Excluded from the Class are the Defendants, and any subdivision or agency of Douglas County and any other persons found culpable of wrong-doing in this action.

On October 15, 1991, the trial court entered an order denying class certification and an order granting summary judgment to appellees and (by implication) denying summary judgment to appellants. Appellants appeal both orders.[7]

1. One of appellants' contentions is that the trial court erred regarding their claim for a declaration that the creation of an SLD for Trail Creek was nugatory. Appellants assert that in fact 100 percent of the lot owners did not sign the petition, and therefore that the public hearing on the petition without notice to lot owners failed to comply with § 55-1107. Appellants further contend that, by extension, an SLTD for Trail Creek was not created in 1990 because no SLD for Trail Creek existed. We find merit in these contentions.

(a) Before addressing the merits of appellants' contentions, we must consider appellees' contention that, because appellants failed to file suit until the ad valorem tax for the SLTD was levied, laches bars appellants' claim for a declaration that the Trail Creek SLD and SLTD are invalid. We conclude that this argument has no merit, since "[l]aches is an *equitable* doctrine not applicable in a petition for declaratory judgment, which is an action at law. See *Hobgood v. Black*, 144 Ga. App. 448, 450 (241 SE2d 60) (1978)." *City of Waycross v. Reid Rental Co.*, 186 Ga. App. 452, 454 (367 SE2d 305) (1988). (Emphasis supplied.)[8]

---

[6] Appellants had paid no assessment or tax under the street light ordinance, and hence were not praying for recovery of any money they had paid. What they sought was to recover payments on behalf of the other members of the class of plaintiffs that they sought to certify.

[7] The trial court did not address appellants' prayer for recovery of the assessments and taxes that other members of the proposed class had paid, and appellants have not raised any issue on appeal concerning that prayer for relief.

[8] In *City of Waycross* the plaintiffs sought a declaration that an ordinance under which they were assessed for street improvements was invalid. *City of Waycross*, supra, 186 Ga. App. at 452. The ordinance was adopted in December 1980, the special assessment was made by July 1981, an execution was filed in August 1981, and plaintiffs did not file suit until

(b) One of the appellants testified by affidavit that appellants did not sign the petition for Trail Creek, and we find that there is no genuine issue as to this fact. The affiant further averred that on its face the petition purported to have the signatures of *tenants* of the appellants who were leasing appellants' lot and dwelling in Trail Creek during the period the petition was circulated, but that the signatures were not those of appellants' tenants. Appellees contend that appellants did not establish that the tenants did not sign the petition, and appear to further contend that if the tenants did sign, their signatures were sufficient.

We find it unnecessary to resolve whether the signatures were those of the tenants, since we conclude that, even assuming for the purposes of reviewing the summary judgment motions that the signatures were in fact affixed by the tenants, as a matter of law their signatures did not satisfy the requirement of § 55-1107 (a) that the petition be signed by *lot owners*.[9]

> Statutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. [Cit.] [*Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987).]

We have three reasons for concluding that the tenants' signatures did not suffice. First, Subsection (a) of § 55-1107 unequivocally stated that a petition would be signed by "lot owners," and in no way suggested that the signatures of tenants were sufficient. Second, extension of the term "lot owners" in § 55-1107 (a) beyond its facial meaning would be inconsistent with the provision in Douglas County Ordinances § 55-1102 that "[t]he cost of providing and maintaining street light service as provided in this ordinance [the Street Light Ordinance] shall be borne *by the owners* of the property receiving that service." (Emphasis supplied.) There is no evidence that the Board intended the term "owners" to have two different meanings within the same ordinance. Third, inasmuch as owners, and not tenants, were obligated to pay assessments, it would be unreasonable to infer a legislative intent to cloak tenants with the authority to initiate the process that could result in such obligations. Accordingly, we hold that the signatures of appellants' tenants did not constitute the signatures of "lot owners" within the meaning of § 55-1107 (a).

(c) Appellees suggest (according to our understanding of their

---

February 1987. Id. 455-456 (dissent of Beasley, J.).

[9] We note that appellants have also challenged the validity of other signatures on the Trail Creek petition, but we do not need to consider whether those other signatures are valid.

brief) that the County Engineer's "sole discretion" under § 55-1107 (b) to "verify the signatures on the petition prior to advertising the public hearing" precludes appellants from contending that the petition lacked 100 percent of the necessary signatures. We find no such preclusion.

We begin our analysis by finding that § 55-1107 (b) was ambiguous, in that it stated that the County Engineer had "sole discretion" to verify signatures *prior to* advertising the public hearing." (Emphasis supplied.) This language is interpretable, as appellees seem to urge, as insulating from any subsequent review the County Engineer's determination that all lot owners in a proposed SLD had signed the petition. However, the language is also construable merely as conferring upon the County Engineer the duty to verify signatures without any external review *up to the time that he referred the petition to the Board*, but not as barring subsequent review of the accuracy of his determination that all lot owners had signed the petition. Another construction might be that the County Engineer's determination would be conclusive regarding whether the proportion of lot owners signing the petition had reached the 75 percent threshold necessary before the petition would be referred to the Board, but that subsequent review of his determination that 100 percent had signed would not be barred. This interpretation would flow from Subsection (b)'s statement that the County Engineer had "sole discretion . . . prior to advertising," which may be read as indicating his discretion would pertain in situations where there would be advertising, i.e., where fewer than all lot owners signed.

We find either of the latter two interpretations more probable, as they are most consistent with the intent of the Board, as expressed in § 55-1107 (a), that any lot owners who did not sign the petition were to be given notice and an opportunity to be heard on the question of establishing an SLD. In addition, we decline to attribute conclusive effect to the County Engineer's verification, absent a clear and unambiguous expression of legislative intent that it should be conclusive. Accordingly, we hold that § 55-1107 (b) was not intended to bar judicial review of whether 100 percent of lot owners signed the Trail Creek SLD petition.

(d) There remains the question of what effect to give to the absence of appellants' signatures from the petition.[10] "In creating such districts all mandatory and jurisdictional steps laid down in the law must be substantially observed." McQuillan Municipal Corporations, § 38.47 at 185 (3rd ed.). Subsection (a) of § 55-1107 stated that

---

[10] No question of the effect of actual notice is presented by the facts of this case, inasmuch as there is no dispute that appellants did not have actual notice of the proposed district before it was created or actual notice of the public hearing before it was held.

"*[u]nless* one hundred (100%) percent of the lot owners have signed the petition, the public hearing *shall* be advertised . . . and signs *shall be* posted." (Emphasis supplied.) In view of the unequivocally mandatory nature of the "[u]nless . . . shall" language, we have no choice but to find that notice to all lot owners in the absence of unanimous signatures on a petition was a jurisdictional step, and that the failure to fulfill that step rendered invalid the subsequent attempts to create the Trail Creek SLD and SLTD.

For the foregoing reasons, we hold that the trial court erred in granting summary judgment against, and in denying summary judgment in favor of, appellants on their claim for a declaration that the attempt to create the Trail Creek SLD, and to subsequently convert it to an SLTD by operation of the 1990 revision of § 14-21, were nugatory. The result of this holding is that the SLD was of no force and effect; the SLTD is of no force and effect; and appellants are not obligated to pay either the SLD assessments or the SLTD tax that was levied against them.

2. Appellants contend that the trial court erred by denying their motion for class certification, but we find no such error. The factors that figure in determining whether it is appropriate to certify a class action pursuant to OCGA § 9-11-23 (a),[11] include

> *the ability of the plaintiff to represent the class . . . .* The important aspects of adequate representation are whether the plaintiffs' counsel is experienced and competent *and whether plaintiffs' interests are antagonistic to those of the class.* [Cit.] [*Stevens v. Thomas*, 257 Ga. 645, 649 (2) (361 SE2d 800) (1987). (Emphasis supplied.)]

On appellate review of a trial court's decision on a motion to certify a class,

> the discretion of the trial judge in certifying or refusing to certify a class action is to be respected in all cases where not abused. [Cits.] [*Hill v. General Finance Corp.*, 144 Ga. App. 434, 436 (1) (241 SE2d 282) (1977).]

---

[11] Section 9-11-23 (a) provides that

[i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly ensure the adequate representation of all may, on behalf of all, bring or defend an action when the character of the right sought to be enforced for or against the class is:

(1) Joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it; or

(2) Several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action.

In the present case we find no abuse of discretion by the trial court, inasmuch as an apparent conflict between the interests of appellants and the interests of many (if not all) of the other members of the proposed class justified the trial court's denial of appellants' motion for class certification. Appellants had the burden of establishing their right to class certification, see Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d, § 1791, p. 392, but they produced no evidence that any other lot owners shared their dissatisfaction with SLTD membership. Moreover, there was evidence that a significant percentage of the SLTDs in Douglas County originated by petition of lot owners, and it must be presumed (in the absence of evidence otherwise) that such lot owners would oppose the inconvenience of invalidation of their districts. Hence, we affirm the order of the trial court denying the motion for class certification.[12]

3. In light of our holdings in this opinion, we do not reach the rest of appellants' enumerations.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunt, Benham and Fletcher, JJ., who dissent.*

DECIDED JULY 8, 1992 —
RECONSIDERATION DENIED JULY 29, 1992.

*Summers & Jones, Ezra B. Jones III, Robert H. Stansfield,* for appellants.

*Edwards & McLeod, Robert B. Edwards, William J. Linkous III,* for appellees.

---

[12] We have noted two cases that appellants claim support their motion: *Anderson v. Blackmon,* 232 Ga. 4, 6-7 (2) (205 SE2d 250) (1974); *Herring v. Ferrell,* 233 Ga. 1, 2 (1) (209 SE2d 599) (1974). Those cases are distinguishable on their facts, as there is no indication that the interests of class members in either case were antagonistic.