## A04A0609. PORTER COMMUNICATIONS COMPANY et al.
## v. SOUTHTRUST BANK et al.
### (601 SE2d 422)

MIKELL, Judge.

Appellants Jimmy Porter, a North Carolina real estate developer, and his two corporations, Porter Communications Company and The Porter Company, appeal the grant of summary judgment to SouthTrust Bank (the "Bank") in the Bank's action for reimbursement and contribution. We affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the evidence shows that Porter, through Porter Communications Company and The Porter Company, purchased two buildings from appellee SouthTrust Bank's predecessor in interest, Bankers First Savings & Loan Association, which Porter agreed to restore and lease back to the Bank. The Bank, as lessee, and The Porter Company, as lessor, entered into a 15-year lease on March 22, 1983 (the "Lease"). The dispute in this case involves the construction of the "basic rental" provision of the Lease and subsequent amendments thereto.

Section 3.01 of the Lease provides as follows:

> In consideration of the leasing aforesaid, Lessee hereby covenants and agrees to pay Lessor . . . a minimum net rental for the original term of the lease equal in total amount to *debt service plus 5 percent annual return on equity investment* payable in advance on the *1st* day of each month, in installments of *See Special Stipulation No. 3* Dollars.[2]

The special stipulation at issue provided that the rental described in Section 3.01 would be a function of the total project cost, which

---

[1] (Citation omitted.) *Phillips v. First Bank of Ga.*, 257 Ga. App. 342 (571 SE2d 410) (2002).

[2] (Emphasis in original.) The citations to the record in appellants' brief recite the text of what is denominated as special stipulation no. 2. There does not appear to be a special stipulation no. 3.

consisted of the purchase price of existing land and buildings, renovation costs, architectural and engineering costs, legal costs, and all costs incurred to obtain an interim and permanent construction loan. Subparagraph (b) of the special stipulation provided that:

> The total of these items is now estimated at $950,000 (net of a Facade Grant of approximately $30,000.00). It is the intent of the Lessor to obtain 80 percent permanent financing acceptable to Lessee with the remaining 20 percent funded through Lessor's cash equity. The rental described in Paragraph 3.01 will be the total monthly amount necessary to service the permanent loan (principal, interest and servicing fees, if any, as charged by the permanent lender or the Downtown Development Authority of Augusta) plus a five percent annual return to Lessor on his equity investment.

Section 2.01 of the Lease defined the "original term" of the Lease to commence on November 1, 1983, and end on October 31, 1998.

Several months later, after the execution of the Lease, Porter and his companies obtained permanent financing through a series of transactions. Specifically, the Downtown Development Authority of Augusta (the "Authority") issued a $1,000,000 bond which the First National Bank of Atlanta ("FNB") purchased. The Authority loaned Porter and Porter Communications Company $1,000,000, for which they executed a 20-year $1,000,000 promissory note (the "Bond Note"), and FNB loaned Porter an additional $200,000 (the "Term Note"). Porter and Porter Communications Company assigned their right to receive rental income under the Lease to FNB as security for Porter's obligation under the Bond Note. Finally, the Bank and the Porter Company executed separate guaranty agreements guaranteeing Porter and Porter Communications Company's obligation under the Bond Note.

In addition to the above transactions, the Bank, Porter, and Porter Communications Company executed a First Amendment to Lease, which provided, in pertinent part, as follows: "Lessee and Lessors mutually desire to amend the Lease in order to set forth and clarify the basic rental under the Lease," and the debt service component of the basic rental under Section 3.01 "shall in all events be in an amount at least equal to the combined installment payments and all other additional amounts due and payable from the Lessors by virtue of a $1,000,000.00 loan from [the Authority] and a $200,000.00 loan from [FNB]." The amendment also added subparagraph (d) to the special stipulation, to specify again the amounts to be included in the monthly rent.

After a dispute arose concerning the rent in June 1984, the parties entered a Compromise, Release, and Settlement Agreement (the "Agreement"), which, by its terms, constituted an amendment to the initial lease. Paragraph two of the Agreement provided, in pertinent part, that "[t]he basic rental required by Section 3.01 of the Lease shall be equal to the amount of debt service on the $1,200,000.00 indebtedness owed [FNB] evidenced by a bond and note dated as of December 1, 1983[,] plus an amount equal to a 5% per annum return on an equity investment of $300,000.00." The Bank made rent payments until the lease expired on December 31, 1998, at which time approximately $300,000 remained due on the Bond Note. Porter paid the $200,000 term note in full in May 1987.

The Bank maintained that it complied with the Lease and made no further rent payments but, pursuant to its obligations as guarantor, tendered the bond payments to FNB. The appellants argued that the Bank, as lessee, was still obligated to pay $300,000, and the Porter Company, as co-guarantor, made no payments to the bondholder or contributions to the Bank as its co-guarantor. The Bank filed the instant action seeking contribution from Porter and the Porter Company for all amounts paid on its behalf to FNB and from the Porter Company, as co-surety. The defendants answered, admitting all of the factual allegations of the complaint and asserting a counterclaim for $300,000. The Bank filed a motion for summary judgment, arguing that it was entitled to judgment as a matter of law on its claims and the appellants' counterclaim. The trial court agreed.

1. In its first enumerated error, appellants state that "the trial court erred in . . . finding that Appellants Porter Communications Company and Porter are liable under the two notes in question because Porter paid off the $200,000 note in May 1987." We disagree.

In their answer, appellants admit that they are bound to pay the principal sums under the notes in question, together with interest, to the bondholder and that the obligations in the guaranty agreement are valid and binding. The trial court simply ruled in accordance therewith, and we agree. The matter of the amount owed by the appellants still remains to be tried.

2. Appellants also contend that the trial court erred by granting the Bank summary judgment on their counterclaim. Specifically, appellants argue that the Bank was obligated to pay the entire debt incurred to fund the project, $1,200,000, rather than the debt service over the 15-year term of the lease, which totaled $900,000. Again, we disagree.

"The construction of the provisions of a lease is generally a

question for the court to determine as a matter of law."[3] Where the terms of a written lease are clear and unambiguous, the court will look to the lease alone to find the intention of the parties.[4] Section 2.01 of the original Lease provided for a lease duration of 15 years. Regarding the rent payments, the original Lease provided for "a minimum net rental for the original term of the lease equal in total amount to debt service plus 5 percent annual return on equity investment." The subsequent amendments, which provided the sums to be used to calculate the basic rental under the Lease, repeatedly referred to "debt service," not "debt."

Appellants argue that the amendments changed the duration of the Lease. However, the record does not support their argument. It is undisputed that the parties knew at the bond closing that the term of the Lease was 15 years, but that the term of the Bond Note was 20 years. Had the parties intended that the bank pay the total amount due on the notes, they could have specifically so stated in the Lease or the amendments thereto, or extended the duration of the Lease to match that of the Bond Note. They did not do so. Appellants rely on their statement in their verified statement of undisputed facts that "[i]t was the parties' intent and agreement that [the Bank] would pay [the $300,000] balance." But parol evidence is not admissible to prove the intentions of parties relative to an unambiguous lease provision.[5]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 18, 2004.

*J. Patrick Claiborne*, for appellants.

*Warlick, Tritt, Stebbins & Hall, James R. Hall, James S. Murray, Daniel W. McLeod*, for appellees.

---

[3] (Citations and punctuation omitted.) *Stern's Gallery of Gifts v. Corporate Property Investors*, 176 Ga. App. 586, 592-593 (4) (337 SE2d 29) (1985); OCGA § 13-2-1.

[4] *Dept. of Transp. v. Calfee Co. of Dalton*, 202 Ga. App. 299, 301 (1) (414 SE2d 268) (1991).

[5] OCGA § 13-2-2 (1); *Archer v. Carson*, 213 Ga. App. 161, 164 (2) (444 SE2d 82) (1994).