A05A2032. VATACS GROUP, INC. et al. v. HOMESIDE LENDING, INC.
(623 SE2d 534)

BLACKBURN, Presiding Judge.

HomeSide Lending, Inc. sued four defendants (American General Finance, Inc., Andjar, Inc., VATACS Group, Inc., and H&I Real Estate, Inc.) to establish HomeSide's superior interest in certain residential property, arguing that an agreement subordinated the defendants' interests in favor of HomeSide's security deed on the property. After the trial court entered summary judgment in favor of HomeSide, VATACS and H&I appealed, arguing that their interests were not subordinated to the HomeSide security deed. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So construed, the evidence shows that in 1991, a potential homeowner received a $144,000[2] loan to purchase certain residential property and gave a first priority security deed to the lender. In January 1993, the homeowner received a $6,000 loan from American General, which was secured by another security deed on the property. Ten months later in November 1993, American General lent $9,000 to

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).
[2] All figures are rounded down to nearest thousand.

the homeowner to pay off the original debt owed to American General and to give the homeowner additional funds; this new debt was secured by the existing January 1993 security deed and by a newly-executed November 1993 security deed.

One month later in December 1993, the homeowner paid off the initial $144,000 loan on the property by receiving a new loan from Appalachian Mortgage Corporation in the amount of $146,000. To secure the new debt, Appalachian required the homeowner to execute a new security deed to Appalachian and required American General to execute a subordination agreement. It is undisputed that under this agreement, American General subordinated its November 1993 security deed to Appalachian's December 1993 security deed, as the November 1993 security deed was expressly referenced in the subordination agreement. The key issue in this case is whether the subordination agreement also subordinated American General's January 1993 security deed.

In March 1997, American General transferred both the January 1993 and the November 1993 deeds to Andjar, Inc. in exchange for $6,000. Because the debt secured by the January 1993 security deed was in default, Andjar commenced foreclosure proceedings. Before the foreclosure sale occurred, Andjar sold its interests in the January 1993 security deed and underlying debt to VATACS for $42,000. VATACS completed the advertised foreclosure sale by successfully bidding $42,000 for the property. After improving the property, VATACS sold the property to H&I Real Estate for $95,000 in June 1997 and took back a security deed from H&I to secure the financing of the purchase price.

In February 2000, HomeSide (the assignee of the Appalachian security deed and note) filed a complaint against American General, Andjar, VATACS, and H&I, asserting four counts. Counts 1 (declaratory judgment) and 4 (cancellation of instrument) asserted superior title to the property. Counts 2 and 3 asserted claims for monetary damages against American General for breach of contract and fraud. Following discovery, American General (later joined by VATACS and H&I) moved for summary judgment on all of HomeSide's claims. HomeSide in turn moved for partial summary judgment on the title dispute claim in Count 1 (declaratory judgment).

The trial court granted HomeSide summary judgment on its title claim in Count 1, declaring that HomeSide's December 1993 security deed had first priority because the subordination agreement subordinated all interests of American General and its successors and assigns (including Andjar, VATACS, and H&I) to that deed. The trial

court denied American General's motion for summary judgment as to HomeSide's breach of contract and fraud claims against American General.[3]

VATACS and H&I appeal the grant of summary judgment to HomeSide. They argue that (i) the subordination agreement did not subordinate the January 1993 security deed, (ii) VATACS and H&I were bona fide purchasers without notice of the subordination agreement, and (iii) HomeSide's laches precluded its declaratory judgment count. We disagree and affirm.

1. VATACS and H&I first argue that the January 1993 security deed that was transferred to VATACS and foreclosed on by VATACS was never subordinated to the December 1993 security deed held by HomeSide, and that therefore the VATACS foreclosure sale transferred the property free and clear of HomeSide's security deed. We hold that the subordination agreement subordinated the January 1993 security deed to HomeSide's December 1993 security deed, and that therefore the foreclosure sale on the January 1993 security deed was subject to HomeSide's superior security deed.

Because the January 1993 security deed was executed and recorded first, it would normally be superior to HomeSide's December 1993 security deed. Nevertheless, "the legal order of priority as between mortgages and other liens or claims may be fixed, reversed, or modified by an agreement of the parties or by a waiver or release on the part of the senior lienholder." (Punctuation omitted.) *Cameron v. Churchill Mtg. Corp.*[4] See *F & W Agriservices v. UAP/Ga. Ag. Chem.*[5] The issue therefore is whether the subordination agreement executed in December 1993 by the holder of the January 1993 security deed (at that time, the holder was American General) subordinated that security deed to the December 1993 security deed.

Construction of a written contract is a question of law for the trial court based on the intent of the parties as set forth in the contract, which question we review de novo. *Deep Six, Inc. v. Abernathy.*[6] "First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the

---

[3] Although American General originally appealed this denial in Case No. A05A2033, that appeal has subsequently been withdrawn.

[4] *Cameron v. Churchill Mtg. Corp.*, 249 Ga. 362, 363-364 (1) (290 SE2d 474) (1982).

[5] *F & W Agriservices v. UAP/Ga. Ag. Chem.*, 250 Ga. App. 238, 240 (1) (549 SE2d 746) (2001).

[6] *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).

rules of contract construction to resolve the ambiguity." *Woody's Steaks, LLC v. Pastoria*.[7]

After referencing the November 1993 security deed,[8] the subordination agreement — which was expressly binding on American General's successors and assigns — provides: "Grantee [American General] does hereby subordinate all right, title and interest under said outstanding Deed to Secure Debt above set forth, or otherwise in or to the property therein described, as against said loan to be made by Appalachian Mortgage Corporation [and its accompanying December 1993 security deed]." We hold that this language is clear and unambiguous. American General not only subordinated all right, title and interest it held under the November 1993 security deed, but it also subordinated all right, title and interest it held otherwise in or to the described property. This would include that title or interest reflected in the January 1993 security deed. In short, this dragnet clause successfully subordinated all interests of American General in the property, whether reflected in the November 1993 security deed, the January 1993 security deed, or otherwise.

Even if we were to hold that by expressly referencing the November 1993 security deed, the agreement were somehow ambiguous as to whether the January 1993 security deed were also covered, we would then apply the rules of contract construction to reach the same result. "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). Thus,

> a contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect. And, one of the most fundamental principles of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless. The intention of the parties to a contract is ascertained from the entire contract, considering each provision in connection with the others, and not giving the contract a construction which entirely neutralizes

---

[7] *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

[8] In correctly referencing the November 1993 security deed by its date of execution, the parties thereto, and the book and page number of its public recordation, the subordination agreement mistakenly refers to the date of public recordation as January 19, 1993. HomeSide claims that the subordination agreement therefore expressly referenced the January 1993 security deed. Because of our ruling on the remaining language of the subordination clause, we need not reach this issue.

one provision if it is susceptible of another which gives effect to all of its provisions.

(Citations and punctuation omitted.) *Vaughn, Coltrane & Assoc. v. Van Horn Constr.*[9] Based on these principles, we could not ignore the "or otherwise" language, which in our view intended to include all interests of American General, whether reflected in the expressly referenced November 1993 security deed *or otherwise.* Cf. *Cameron,* supra at 363 (enforcing a similarly worded subordination agreement).

Even though this dragnet clause in the duly recorded subordination agreement is alone sufficient to effect the subordination of the January 1993 security deed and to place VATACS and H&I on constructive notice of the subordination, two additional undisputed facts show that these parties were on constructive notice of the subordination. First, the recorded subordination agreement expressly alerted VATACS and H&I that it was binding on all successors and assigns of American General, which would include VATACS and H&I since they are successors in interest of American General and received their interests through Andjar, an assign of American General. The omnibus "or otherwise" language of the recorded subordination agreement regarding American General's interests constructively notified them as successors and assigns of American General of the subordination. Second, the subordination agreement expressly referenced the November 1993 security deed as being subordinated. The duly recorded November 1993 security deed in its text expressly references American General's January 1993 security deed, thus providing VATACS and H&I with yet another link notifying them of the January 1993 security deed as an interest of American General that was being subordinated by the dragnet "or otherwise" language of the subordination agreement.

To counter this interpretation, VATACS and H&I cite to various statements made by witnesses who believed that the subordination agreement did not intend to subordinate the January 1993 deed. For example, at oral argument and in their briefs, they cite to (a) the testimony of the lawyer who drafted the subordination agreement that he believed the January 1993 deed was already satisfied and that therefore he did not believe the subordination agreement needed to subordinate that deed; (b) the testimony of a HomeSide paralegal who believed that HomeSide had a title problem because the January 1993 security deed was not expressly referenced in the subordination

---

[9] *Vaughn, Coltrane & Assoc. v. Van Horn Constr.*, 254 Ga. App. 693, 695-696 (563 SE2d 548) (2002).

agreement; and (c) other testimony showing that HomeSide sought to persuade American General to cancel its January 1993 security deed so that HomeSide could proceed with a foreclosure sale free of that deed. All of this evidence, however, is parol and is therefore inadmissible to construe the unambiguous language of the subordination agreement. *Dan J. Sheehan Co. v. Ceramic Technics, Ltd.*[10] ("[a]bsent an ambiguity, '(p)arol evidence is inadmissible to add to, take from, or vary a written contract.' OCGA § 13-2-2 (1)"); *Porter Communications Co. v. SouthTrust Bank*[11] ("parol evidence is not admissible to prove the intentions of parties relative to an unambiguous [contract] provision"). Here, the "or otherwise" language unambiguously intended to subordinate all interests of American General, and parol evidence was therefore inadmissible to vary or take from this language.

Inasmuch as the January 1993 security deed was junior to HomeSide's December 1993 security deed, the foreclosure on the junior security deed conveyed to VATACS title that was subject to HomeSide's security deed. See *Partin v. Southern Discount Co.*[12] Accordingly, the title subsequently conveyed by VATACS to H&I, as well as the security deed conveyed back to VATACS to secure the financing on the transaction, were also subject to HomeSide's security deed. The trial court's summary judgment order to this effect was therefore proper.

2. VATACS and H&I attempt to avoid the effect of the subordination agreement by claiming that they were unaware of such and that under OCGA § 23-1-20, they took title as bona fide purchasers for value without notice; therefore, they claim, they took the property free of HomeSide's security deed. We disagree.

"To qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue. A purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title." (Footnote omitted.) *Va. Highland Civic Assn. v. Paces Properties.*[13] Chain of title includes all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument. See *Insilco Corp. v. Carter*;[14] *Middle Ga. Realty v. IDS Homes.*[15]

---

[10] *Dan J. Sheehan Co. v. Ceramic Technics, Ltd.*, 269 Ga. App. 773, 777 (3) (605 SE2d 375) (2004).

[11] *Porter Communications Co. v. SouthTrust Bank*, 268 Ga. App. 29, 32 (2) (601 SE2d 422) (2004).

[12] *Partin v. Southern Discount Co.*, 167 Ga. App. 798 (307 SE2d 697) (1983).

[13] *Va. Highland Civic Assn. v. Paces Properties*, 250 Ga. App. 72, 74 (550 SE2d 128) (2001).

[14] *Insilco Corp. v. Carter*, 245 Ga. 513, 514 (2) (265 SE2d 794) (1980).

[15] *Middle Ga. Realty v. IDS Homes*, 231 Ga. 57, 59 (1) (200 SE2d 141) (1973).

Here, at the time American General held its publicly recorded interests in the property as reflected in the January 1993 and November 1993 security deeds, American General in December 1993 executed the subordination agreement, which was then recorded in January 1994. American General did not transfer its interests in these two security deeds to Andjar until March 1997. Accordingly, the subordination agreement was in the chain of title when on May 1, 1997, Andjar conveyed its interest in the January 1993 security deed to VATACS, which then foreclosed on that deed on May 6 (purchasing the property itself). It was also in the chain of title when VATACS then conveyed the property to H&I in June 1997 and took back a security deed to secure the financing. VATACS and H&I therefore had constructive notice of the subordination agreement.

To avoid this doctrine, VATACS and H&I argue that the subordination agreement is outside the chain of title because it was recorded after the January 1993 security deed was filed, which is the deed through which they claim title. They fail to cite any applicable authority for this proposition, which would hold that all subordinations, liens, easements, and other encumbrances — executed and recorded by American General during the time it held the January 1993 security deed — would be outside the chain of title and would therefore not be notice to the world of their existence. VATACS and H&I do cite Pindar's Real Estate Law & Procedure for the following concept:

> [a] title examiner is obliged to run through the index of grantors until he finds a conveyance by the owner of the land in question. After such conveyance, the former owner becomes a stranger to the title, and the examiner must follow down the name of the new owner to see if he has conveyed the land, and so on. It would be a hardship to require an examiner to follow in the indexes of grantors the names of every person who at any time through perhaps a long chain of title was the owner of the land.

(Punctuation omitted.) 3 Hinkel, Pindar's Real Estate Law & Procedure, § 26-5, p. 42, n. 4 (6th ed. 2004). But this does not address the basic concept that all instruments executed and recorded by an interest holder such as American General during the time American General held its duly recorded interest are in the chain of title and are therefore constructive notice to VATACS and H&I. The authority cited by VATACS and H&I provides us no basis to adopt a contrary approach to the concepts of chain of title and title searches.

VATACS and H&I further claim at oral argument and in their briefs that because the January 1993 security deed was not expressly

referenced in the subordination agreement, they were not on notice that *that deed* was subordinated. This argument ignores the fact that title searches are based primarily on searching the records to determine if the grantee (who has been granted a publicly recorded interest in the property in question) subsequently conveyed its interest in the property or encumbered such interest in the property prior to conveying it. See 3 Hinkel, Pindar's Real Estate Law & Procedure, § 26-5, pp. 40-41 (6th ed. 2004). The establishment of notice does not depend on whether *the deed* granting the grantee his interest is referenced in a subsequently recorded instrument. For example, a grantee may quitclaim to another party all his interest in a certain parcel of property without referencing the deed or deeds whereby he obtained his interest in the property. This recorded quitclaim deed — assuming it has adequately described the property — is notice to the world of this conveyance. The same is true of any recorded instruments executed by the grantee in which he encumbers his interest in the property before conveying it. VATACS and H&I's arguments to the contrary are without merit.

3. VATACS and H&I next argue that HomeSide's laches in filing for a declaratory judgment bars this action. They urge that since it is a question of fact as to whether HomeSide was dilatory under the doctrine of laches, summary judgment in HomeSide's favor was improper. "We conclude that this argument has no merit, since laches is an *equitable* doctrine not applicable in a petition for declaratory judgment, which is an action at law." (Punctuation omitted.) *Jones v. Douglas County.*[16] See *City of Waycross v. Reid Rental Co.*[17]

VATACS and H&I contend that *Jones* — a 1992 Supreme Court of Georgia case — was overruled sub silentio when in 1999 the Supreme Court of Georgia decided *Redfearn v. Huntcliff Homes Assn.*[18] In *Redfearn*, however, the issue was *not* whether laches could be asserted as a defense to a declaratory judgment complaint (indeed, in that case laches was being asserted as a defense to a complaint seeking equitable injunctive relief). See id. at 746. Rather, the issue in *Redfearn* was jurisdictional: whether the equitable nature of the relief sought combined with the affirmative defense of laches made the case an "equity case," over which the Supreme Court had jurisdiction. *Redfearn* held that this did not constitute an "equity case" for jurisdictional purposes under the Georgia Constitution[19] and transferred the matter to our Court. Id. at 750 (4).

---

[16] *Jones v. Douglas County*, 262 Ga. 317, 320 (1) (a) (418 SE2d 19) (1992).
[17] *City of Waycross v. Reid Rental Co.*, 186 Ga. App. 452, 454 (367 SE2d 305) (1988).
[18] *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745, 749-750 (524 SE2d 464) (1999).
[19] Ga. Const. 1983, Art. VI, Sec. VI, Par. III (2).

Therefore, *Redfearn*, which focused on jurisdictional issues, did not purport to overrule the substantive law set forth only seven years earlier in *Jones* that laches was an improper defense to a declaratory judgment petition, and we decline to read such into *Redfearn*. Indeed, two years after *Redfearn*, the Supreme Court of Georgia in *Holmes v. Henderson*[20] cited *Jones* for the proposition that "[t]he equitable doctrine of unclean hands . . . has no application to an action at law" such as a declaratory judgment action concerning property rights. Accordingly, we will continue to follow *Jones*. The trial court correctly granted summary judgment to HomeSide on this issue.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED OCTOBER 31, 2005 —
RECONSIDERATION DENIED NOVEMBER 16, 2005 — 

*Cauthorn & Nohr, Thomas E. Cauthorn III, Melissa M. Nohr, Justin B. O'Dell, Morris, Manning & Martin, Lewis E. Hassett, Beth E. Rogers, David S. DeLugas*, for appellants.

*Frederic S. Beloin, Charles W. Brown*, for appellee.

---

[20] *Holmes v. Henderson*, 274 Ga. 8-9 (1) (549 SE2d 81) (2001).