**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 30, 2018**

# In the Court of Appeals of Georgia

A17A1428. COOK PECAN COMPANY, INC. v. MCDANIEL.

REESE, Judge.

Cook Pecan Company, Inc. ("Cook Pecan") filed suit against William McDaniel, alleging by amended complaint that McDaniel had signed a contract agreeing to enter into a lease agreement with Cook Pecan to allow Cook Pecan to harvest pecans on property that McDaniel was purchasing. Cook Pecan asserted that McDaniel failed to execute the lease agreement and sought equitable relief on various grounds, including that McDaniel was unjustly enriched after he harvested the pecan crop that Cook Pecan had fertilized and cultivated. Cook Pecan appeals from the grant of summary judgment in favor of McDaniel. For the reasons set forth, infra, we affirm.

We have previously reviewed this case on appeal from a summary-judgment ruling, and our prior opinion (*Cook Pecan I*) sets forth many of the facts relevant to the instant appeal.[1] But by way of review (and viewing the evidence in the light most favorable to Cook Pecan, the nonmoving party),[2] the evidence shows the following:

> Cook Pecan, owned by Mark Cook, farms and harvests pecan crops from lands leased to the company but owned by other entities. In the summer of 2012, McDaniel agreed to purchase a 20-plus-acre pecan orchard from Sara Pyles. Upon learning of the impending sale, Cook informed McDaniel and Pyles that Cook had an agreement with Pyles' deceased husband to harvest the crops on the property. On July 31, 2012, Cook, McDaniel, and Pyles executed a written agreement providing that, upon acquiring the property, McDaniel would sign a lease agreement with Cook that would allow Cook Pecan to maintain and harvest the crops on the property through the end of 2012. Cook Pecan did not harvest the pecan crop prior to December 31, 2012. On January 3, 2013, McDaniel sent a letter to Cook Pecan informing the company that the lease agreement expired. McDaniel subsequently harvested the pecans on his property from January 7 to January 23, 2013.[3]

---

[1] See *Cook Pecan Co. v. McDaniel*, 337 Ga. App. 186 (786 SE2d 852) (2016).

[2] See *Leone v. Green Tree Servicing*, 311 Ga. App. 702 (716 SE2d 720) (2011).

[3] See *Cook Pecan Co.*, 337 Ga. App. at 187.

Specifically, the July 31, 2012 contract, signed by Pyles, McDaniel, and Mark Cook, provided:

A. Bill McDaniel will purchase the 20+ acre pecan orchard owned by Sara Pyles which is currently being maintained by Cook Pecan Company.

B. At the time of closing, Bill McDaniel will sign a lease agreement with Mr. Cook that allows Cook Pecan Company to continue with the maintenance and harvesting of the pecans through the end of 2012. The terms of the lease will require that the orchard be maintained using good husbandry practices and properly fertilized, watered, pruned and sprayed in accordance with recommended pecan maintenance practices. Cook Pecan Company['s] share of proceeds will be 75% and orchard owner['s] share will be 25%.

When McDaniel refused to allow Cook Pecan to harvest the crops after December 31, 2012, Cook Pecan sued for breach of contract, later amending its complaint to seek equitable relief. In June 2015, the trial court granted summary judgment in favor of McDaniel, finding that "[t]he phrase 'through the end of 2012' [was] capable of only one meaning: the contract expired on December 31, 2012."[4]

---

[4] The court noted that this phrase was consistent with OCGA § 44-12-240, which specifically refers to the harvesting of pecans and defines "[h]arvesting season" as "that portion of each calendar year beginning on October 1 and ending [on] December 31."

Because Cook Pecan failed to harvest the pecans prior to that date and there was no evidence of any subsequent agreements to extend the date, the trial court concluded that McDaniel was entitled to judgment as a matter of law.

In *Cook Pecan I*, we affirmed as to Cook Pecan's breach-of-contract claim, stating: "Assuming without deciding that the agreement to enter a future leasing agreement is enforceable, any contractual right that Cook Pecan had to harvest the crops on McDaniel's property expired on December 31, 2012."[5] In light of the absence of a clear ruling on whether there was ever a valid contract between the parties and noting that a claim of unjust enrichment would lie only if there was no legal contract, we remanded for the trial court to address Cook Pecan's equitable claims.[6]

On remand, the trial court granted summary judgment in favor of McDaniel on all of Cook Pecan's remaining claims in its complaint, as amended. The trial court explicitly found that the July 31, 2012 contract was enforceable and was "legally

---

[5] *Cook Pecan Co.*, 337 Ga. App. at 190 (2) (footnote omitted, citing *Hewitt Assocs. v. Rollins, Inc.*, 294 Ga. App. 600, 602 (669 SE2d 551) (2008)).

[6] See *Cook Pecan Co.*, 337 Ga. App. at 192 (3) (b) (declining to affirm under the right-for-any-reason doctrine in part because McDaniel had not addressed the quantum meruit claim in the trial court).

4

identical" to the contract before the Supreme Court of Georgia in *Newman v. Newman*.[7] The court noted that, because the parties had a legal, enforceable contract, Cook Pecan was precluded as a matter of law from recovering under the equitable theories of unjust enrichment, quantum meruit, and money had and received.

Further, the trial court found that the "stranger doctrine" defeated Cook Pecan's claim for tortious interference with business relations because the claim was directly related to its contractual relationship with McDaniel and to McDaniel's actions concerning the object of that contract, i.e., the pecans, after the contract expired. Alternatively, the court found that there was no evidence that McDaniel had acted wrongfully or with malicious intent, which is required to prevail on a tortious interference claim. Cook Pecan appeals these rulings.

"On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[8] With these guiding principles in mind, we turn now to Cook Pecan's specific claims of error.

_____

[7] 291 Ga. 635 (732 SE2d 77) (2012).

[8] *Leone*, 311 Ga. App. at 702 (punctuation and footnote omitted).

5

1. Cook Pecan argues that the trial court erred by concluding as a matter of law that the contract between the parties was legally enforceable. Specifically, it contends that the 140-word agreement simply referred to a forthcoming lease agreement and did not contain all of the terms and conditions typically found in commercial lease agreements.

In *Hewitt Associates*, cited in *Cook Pecan I*, we held that "[u]nless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect. Thus, an agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto."[9] In that case, a company never signed an extension of a contract with its employee benefits plan administrator.[10] While it expressed a willingness to enter into an extension, there was no testimony that it ever overcame its objection to a penalty clause.[11] Thus, we concluded that there was no evidence of more than an agreement to agree.[12]

---

[9] 294 Ga. App. at 602 (1).

[10] Id. at 601, 602 (1).

[11] Id. at 602 (1).

[12] Id.

6

By contrast, in *Newman*, the Supreme Court of Georgia affirmed a trial court's order granting a wife's motion to enforce a prenuptial agreement, even though the parties had added a handwritten provision acknowledging "certain ambiguities" that they agreed to clarify and rewrite within 30 days of execution.[13] Despite the parties' belief that the agreement contained ambiguities, "nothing in the language of the agreement itself demonstrate[d] it was incomplete or tentative at the time it was executed."[14] Moreover, "[the] husband ha[d] not identified any essential term left to future negotiation."[15]

We agree with the trial court that, similar to the prenuptial agreement at issue in *Newman*, the July 31, 2012 contract in this case is enforceable.[16] As in *Newman*, "[t]he language of the [contract] itself presents no lack of certainty which would render the entire [contract] unenforceable."[17] The parties' statement that they intended

---

[13] 291 Ga. at 635.

[14] Id. at 636.

[15] Id.

[16] See OCGA § 13-3-1 ("To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.").

[17] See *Newman*, 291 Ga. at 637 (citations omitted).

7

to sign a lease agreement upon McDaniel's purchase of the orchard did not mean they did not intend to be bound by the essential terms to which they already agreed.[18] The contract adequately identified the parties, described the property, explained how proceeds would be calculated and distributed to McDaniel as consideration for the lease, and stated the lease term.[19] The July 31, 2012 contract thus met the requirements for a valid lease and is enforceable on its own.[20] Because the language is clear and unambiguous, we need not look to parol evidence.[21]

2. Cook Pecan contends that, based on its erroneous conclusion that the contract was enforceable, the trial court also erred in granting summary judgment against Cook Pecan on its claims for unjust enrichment, quantum meruit, and money

---

[18] See id.

[19] See *Wright v. IC Enterprises*, 330 Ga. App. 303, 307 (1) (765 SE2d 484) (2014).

[20] See id.

[21] See *Porter Communications Co. v. SouthTrust Bank*, 268 Ga. App. 29, 32 (2) (601 SE2d 422) (2004) ("Where the terms of a written lease are clear and unambiguous, the court will look to the lease alone to find the intention of the parties.") (footnote omitted).

had and received. Based on our holding in Division 1, supra, the trial court properly granted summary judgment in favor of McDaniel on these claims.[22]

3. Cook Pecan argues that the trial court erred in granting summary judgment on its claim for tortious interference with business relations and applied an overly broad definition of "directly related" in applying the stranger doctrine. Cook Pecan contends that the business relationship with which McDaniel tortiously interfered was that between Cook Pecan and its consumers.

> To recover for tortious interference with business relations, a plaintiff must establish that the defendant: (1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with [the plaintiff]; and (4) caused the plaintiff financial injury. To sustain a claim for intentional interference with business relations, the tortfeasor must be an "intermeddler" acting improperly and without privilege. To be liable for tortious interference

---

[22] See *Fernandez v. WebSingularity, Inc.*, 299 Ga. App. 11, 13-14 (2) (681 SE2d 717) (2009) ("An action for money had and received, although legal in form, is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is a substitute for a suit in equity. Such a claim exists only where there is no actual legal contract governing the issue.") (punctuation and footnotes omitted); *Kwickie/Flash Foods v. Lakeside Petroleum*, 246 Ga. App. 729, 730 (541 SE2d 699) (2000) ("Recovery in quantum meruit is not authorized when . . . the claim is based on an express contract[.] Neither does an unjust enrichment theory lie where there is an express contract.") (citations and footnote omitted).

with business relations, one must be a stranger to the business relationship giving rise to and underpinning the contract. But, where a defendant had a legitimate interest in either the contract or a party to the contract, he is not a stranger to the contract itself or to the business relationship giving rise thereto and underpinning the contract. Nor does the fact that a defendant did not sign the contract preclude a finding that he was no stranger to the contract. In sum, all parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships.[23]

The trial court properly found that the stranger doctrine precludes Cook Pecan's claim for recovery under this theory because the claim was directly related to its contractual relationship with McDaniel and to McDaniel's actions concerning the pecans after the contract expired.[24] The trial court also did not err in granting summary judgment on a separate and independent ground,[25] i.e., that no evidence

---

[23] *Cox v. City of Atlanta*, 266 Ga. App. 329, 332-333 (1) (596 SE2d 785) (2004).

[24] See id.

[25] We note, as McDaniel points out, that Cook Pecan failed to attack this alternative ground in its appellate brief. "Grounds that are not attacked as erroneous will not be considered on appeal and are presumed to be binding and correct. An appellant's failure to attack alternative bases for a judgment results in the affirmance of that judgment." *Brown v. Fokes Properties 2002*, 283 Ga. 231, 233 (2) (657 SE2d 820) (2008) (citation and punctuation omitted).

existed that McDaniel had acted wrongfully or with malicious intent with regard to his handling of the parties' contract, which had expired before he harvested the pecans.[26] Accordingly, we affirm the grant of summary judgment in favor of McDaniel.

*Judgment affirmed. Miller, P. J., and Doyle, P. J., concur.*

---

[26] See *Cox*, 266 Ga. App. at 332-333 (1); see also *Cook Pecan Co.*, 337 Ga. App. at 190 (2) ("[A]ny contractual right that Cook Pecan had to harvest the crops on McDaniel's property expired on December 31, 2012. Thus, McDaniel could not be said to have breached any agreement[.]").