A03A1108, A03A1109. ECKERD CORPORATION v. ALTERMAN
PROPERTIES, LTD.; and vice versa.

(589 SE2d 660)

MIKELL, Judge.

In this commercial lease dispute between Alterman Properties, Ltd., ("Alterman") and Eckerd Corporation ("Eckerd"), we reverse the grant of summary judgment to Alterman on its claim for $62,953.82 in rent and affirm the denial of summary judgment on Alterman's claim for a writ of possession. The relevant facts follow.

The lease, executed in 1979, provided for an initial term of twenty years and an option to renew for four successive five-year periods. In 1998, Eckerd exercised its option to renew the lease for a five-year term beginning in 1999.

In addition to an annual fixed sum as rent, which was $41,952.75 at the time this dispute arose, the lease required Eckerd to pay an amount equal to two percent of its gross receipts less the fixed rental. In Section 12 (B), Eckerd retained the right to remodel the premises and credit the costs thereof against the percentage rent under specific conditions:

> At any time after the end of the fifteenth year of the lease term and provided there remains no less than ten (10) years of unexpired term or extension thereof, the Tenant may at its sole cost and expense recondition the leased premises. The Tenant's total costs of such reconditioning shall become a credit against percentage rents . . . which may accrue during the three (3) consecutive lease years ending after the completion of such remodelling [sic].

On November 5, 1999, Eckerd wrote Alterman a letter stating that an audit revealed that Eckerd had failed to deduct $62,953.82 in remodeling costs incurred in 1997 from percentage rents, as permitted under Section 12 (B). Eckerd requested either reimbursement in that amount or permission to deduct the costs from a future percentage rent payment. Documentation of the costs of construction, which was completed in 1997, was attached to the letter. Having received no

immediate reply, Eckerd paid the full 1999 percentage rent of $122,055.48 on February 17, 2000.

Two weeks later, on February 25, 2000, Alterman finally responded to Eckerd's November letter, "requesting copies of the [remodeling] expenses for review." Eckerd's counsel replied on September 20, 2000, noting that Alterman already had received documentation of the remodeling costs. In addition, counsel asserted that when the work was completed in 1997, there remained two years on the base term of the lease plus four five-year options to renew, for a total of twenty-two years remaining under the lease. Thus, Eckerd contended that since more than ten years of unexpired term or extension thereof remained, Eckerd was entitled to a credit in the disputed amount against percentage rent. The letter concluded that absent reimbursement, Eckerd intended to deduct $62,953.82 from the percentage rent due for the 2000 lease year.

Alterman's counsel replied on November 8, 2000, refusing to credit the disputed sum and threatening to initiate dispossessory proceedings in the event Eckerd deducted it from the 2000 payment. Alterman contended that the renewal options were not included in the "unexpired term or extension thereof" pursuant to Section 12 (B), and that Eckerd was required to exercise at least two of the options prior to the completion of the remodeling work in order to take the cost as a credit.

More correspondence followed. In a letter dated February 9, 2001, Eckerd disputed Alterman's interpretation of the lease, and again demanded reimbursement of $62,953.82. Finally, on May 14, 2001, Alterman served Eckerd with notice of default for failure to pay percentage rent for the year 2000. Alterman elected to terminate the lease and demanded possession of the premises by June 15, 2001. In response, Eckerd invoked Section 20 (C), which provided that the lease would expire pursuant to the notice of default, "unless steps have, in good faith, been commenced promptly by the Tenant to rectify the same, and prosecuted to completion with diligence and continuity." Thus, Eckerd tendered Alterman payment in the amount of $39,742.91, representing the 2000 percentage rent of $102,696.73 less $62,953.82, and asserted that it had "taken steps, in good faith, to promptly rectify" the default.

On June 4, 2001, Alterman rejected the tender and demanded payment of the entire $102,696.73 within 15 days. On June 27, Alterman demanded possession of the premises by July 8. Eckerd declined to vacate, contending that it had not breached the lease. Shortly thereafter, Alterman filed a dispossessory action against Eckerd, seeking a writ of possession as well as a money judgment in the amount of $102,696.73. Eckerd filed an answer and counterclaim,

asserting that it was entitled to offset $62,953.82 against the $102,696.73 and that Alterman lacked cause to terminate the lease.[1]

The parties filed cross-motions for summary judgment. The trial court interpreted Section 12 (B) of the lease to mean that Eckerd was required to take the remodeling costs as a credit against percentage rents payable for any of the lease years ending in 1997, 1998, or 1999 — "the three consecutive lease years ending after the completion of such remodeling." Because Eckerd failed to deduct the costs from the percentage rent payable in those three years, the court concluded that Eckerd waived its right to a credit. Accordingly, the court granted partial summary judgment to Alterman and entered a separate money judgment in the amount of $62,953.82. In Case No. A03A1108, Eckerd appeals these orders and we reverse, holding that genuine issues of material fact remain for a jury to decide.

The trial court next concluded that Eckerd was in default under the lease for failing to pay its percentage rent due for the year 2000 in a timely manner. However, the court also held that whether Eckerd's deduction of the remodeling costs from that rent could be deemed a step taken in good faith to rectify its default pursuant to Section 20 (C) of the lease was a jury question. Therefore, the court denied summary judgment to Alterman on whether it was entitled to a writ of possession. Alterman's appeal from this portion of the trial court's order is Case No. A03A1109, and we affirm.

The rules governing summary judgment apply to both cases. When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion.[2] On appeal, this Court conducts a de novo review of the law and the evidence.[3]

## Case No. A03A1108

1. In Eckerd's appeal, we must initially determine whether the trial court correctly interpreted the following sentence in Section 12 (B) of the lease: "The Tenant's total costs of such reconditioning shall become a credit against percentage rents . . . which may accrue during the three (3) consecutive lease years ending after the completion of such remodelling [sic]." In contracts, "[w]ords generally bear their

---

[1] Eckerd paid all rental sums allegedly due into the registry of the court, and they were disbursed to Alterman.

[2] *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

[3] Id.

usual and common signification."[4] In its most basic sense, a credit is "a deduction from an amount otherwise due."[5] "Accrue" is defined as "to come into existence as a legally enforceable claim."[6] Therefore, under this lease provision, the remodeling costs became deductible from percentage rents as a legally enforceable claim during the three-year period ending in 1999. In other words, the trial court correctly ruled that Eckerd was legally entitled to take the deduction in any of those three years.

However, contrary to the trial court's conclusion, we hold that Eckerd's failure to deduct the sum from percentage rents due in those years cannot be deemed a waiver of the credit as a matter of law.

> A party may by his conduct waive a legal right but where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible.[7]

The evidence in the case sub judice reflects that Eckerd asserted its right to the credit by letter dated November 5, 1999, several weeks before the three-year period within which to take the credit expired. A jury could determine that Eckerd's letter to Alterman is inconsistent with a waiver. Moreover, a jury might reasonably explain Eckerd's conduct by finding that Eckerd wished to avoid a dispute as to the amount of remodeling costs prior to deducting them from percentage rent due to Alterman.

Alterman argues that, as a matter of law, it did not waive Eckerd's breach for failure to pay the 2000 percentage rental in a timely manner. Again, we disagree.

> A waiver may be express, or may be inferred from actions, conduct, or a course of dealing. . . . Acting on the theory that the contract is still in force, as by continuing performance, demanding or urging further performance, or permitting the other party to perform and accepting or retaining benefits under the contract, may constitute waiver of a breach.[8]

---

[4] OCGA § 13-2-2 (2).

[5] Webster's New Collegiate Dictionary (1975), p. 267.

[6] Webster's New Collegiate Dictionary (1975), p. 8.

[7] (Citations omitted.) *MNM 5, Inc. v. Anderson/6438 Northeast Partners*, 215 Ga. App. 407, 410 (2) (451 SE2d 788) (1994).

[8] (Citations and punctuation omitted.) *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989).

Alterman accepted full payment of the 1999 percentage rental from Eckerd prior to responding to Eckerd's request for a credit. "The question whether the parties' mutual conduct caused a waiver and effected a quasi-new agreement ordinarily is a question for the jury."[9] Whether the parties' mutual conduct effected a waiver under the circumstances presented in this case is a matter for the jury to decide.

2. Although we need not address Eckerd's remaining enumerated errors in light of our holding in Division 1, we find it in the interests of judicial economy to consider Eckerd's contention that it satisfied the condition precedent to its right to remodel the premises. In this regard, the first sentence of Section 12 (B) states: "At any time after the end of the fifteenth year of the lease term and provided there remains no less than ten (10) years of unexpired term or extension thereof, the Tenant may at its sole cost and expense recondition the leased premises." It is undisputed that the premises were remodeled in 1997, over 15 years after the lease was executed. However, Alterman argues that, in 1997, there were not "ten (10) years of unexpired term or extension thereof" remaining under the lease, such that Eckerd was not entitled to remodel the premises. Alterman contends that because only two years of unexpired term remained in 1997, Eckerd was required to exercise two extensions prior to the remodeling in order to satisfy this condition.

The cardinal rule of contract construction is to ascertain the intent of the parties.[10] Three steps comprise this process:

> First, the court decides if the contract language is unambiguous, and if so the court enforces the contract's clear terms. Second, if the contract is ambiguous, the court must apply the rules of contract construction to resolve the ambiguity. And third, if the ambiguity remains after use of the construction rules, the meaning of the contract must be decided by a jury.[11]

In addition, a contract must be construed so as to reconcile its different provisions[12] and to avoid an interpretation which renders any portion meaningless.[13]

---

[9] Id.

[10] *Balata Dev. Corp. v. Reed,* 249 Ga. App. 528, 529 (548 SE2d 668) (2001); OCGA § 13-2-3.

[11] (Footnotes omitted.) *Caswell v. Anderson,* 241 Ga. App. 703, 705 (527 SE2d 582) (2000).

[12] *Connell v. Guarantee Trust Life Ins. Co.,* 246 Ga. App. 467, 469 (1) (541 SE2d 403) (2000).

[13] *Bd. of Regents &c. of Ga. v. A. B. & E., Inc.,* 182 Ga. App. 671, 675 (357 SE2d 100) (1987).

Alterman correctly notes that any ambiguity in the language of the lease must be construed against Eckerd as the drafter.[14] However, we reject Alterman's proffered interpretation of Section 12 (B) because we find that no ambiguity remains after applying the rules of construction. First, we note that Section 3 (A) required Eckerd to give only six months notice of its election to exercise an option. Interpreting Section 12 (B) to require Eckerd to give several years notice of such an election conflicts with Section 3 (A) and renders it meaningless. Clearly, Section 12 (B) contemplates that there must have been at least two five-year renewal options remaining under the contract, whether or not those options had been exercised, in order for Eckerd to invoke its remodeling rights. No other interpretation is reasonable. "Ambiguity exists when the language may be fairly understood in more than one way; language is unambiguous if it is capable of only one reasonable interpretation."[15] Accordingly, the language is not ambiguous, and the condition precedent has been satisfied.

### Case No. A03A1109

3. In its cross-appeal, Alterman argues that it was entitled to a writ of possession as a matter of law because Eckerd failed to pay rent when due and held over beyond the term of the lease. Although these arguments are couched in separate enumerations of error, we consider them together.

In Section 4 (C), the lease provides that "[t]he fixed annual rent . . . shall be considered sufficient consideration for the term of this leasehold." It then describes the percentage due as additional rental. Section 20 (B) states one event of default as a failure to perform any covenant in the lease. Section 20 (C) gives Alterman the right to terminate the lease upon Eckerd's default, "unless steps have, in good faith, been commenced promptly by the Tenant to rectify the same, and prosecuted to completion with diligence and continuity." As noted above, in interpreting contracts, we attempt to effectuate the parties' intent, which requires harmonizing all relevant provisions. In this case, it is clear from the above-cited provisions that the parties intended that failure to pay the percentage rent constituted an event of default. However, Alterman could not terminate the lease so long as Eckerd took good-faith, prompt, and diligent steps to resolve the

---

[14] OCGA § 13-2-2 (5); *Asian Square Partners v. Ly*, 238 Ga. App. 165, 167 (1) (518 SE2d 166) (1999).

[15] (Footnotes omitted.) *Caswell*, supra.

amount due. Whether or not Eckerd did so is not for a court to decide; rather, "the question of good faith is for the jury."[16]

It was undisputed that Eckerd timely paid the fixed rent under the lease. Moreover, "[i]n a commercial lease, the default provisions are controlling."[17] Accordingly, cases cited by Alterman for the proposition that a writ should issue pursuant to OCGA § 44-7-50 et seq. for nonpayment of rent are inapplicable.[18] Finally, Alterman's argument that Eckerd's tender of the undisputed amount of the 2000 percentage rental was insufficient as a matter of law to comply with Section 20 (C) is wholly unpersuasive.

*Judgment reversed in Case No. A03A1108. Judgment affirmed in Case No. A03A1109. Johnson, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 12, 2003 — 

*Pendergast & Jones, Ezra B. Jones III,* for appellant.
*Neil A. Moskowitz,* for appellee.

---

[16] *Rogers v. Farmers & Merchants Bank,* 247 Ga. App. 631, 633 (545 SE2d 51) (2001).

[17] *Dublin Pub, Inc. v. Mut. Life Ins. Co. of New York,* 191 Ga. App. 677, 679 (2) (382 SE2d 654) (1989).

[18] *Price v. Age, Ltd.,* 194 Ga. App. 141 (390 SE2d 242) (1990); *Perimeter Mall v. Retail Sense,* 162 Ga. App. 465 (291 SE2d 392) (1982); *Metro Mgmt. Co. v. Parker,* 247 Ga. 625 (278 SE2d 643) (1981).