A03A1993. ASSOCIATED SERVICES OF ACCOUNTABLE PROFESSIONALS, LTD., INC. v. WORKMAN.
(593 SE2d 882)

PHIPPS, Judge.

Associated Services of Accountable Professionals, Ltd., Inc. (ASAP), a home health care agency, sued Sue Workman for payment on a contract it had entered to provide nursing services to her father, who is now deceased. Workman moved for summary judgment, arguing that although she had signed the contract on her father's behalf, she was not personally liable for payment. After a hearing, the trial court granted her motion. ASAP appeals, but we affirm.

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo.[1]

---

The contract at issue was ASAP's standard, preprinted "Client Services Agreement," and the blank for "Client Name" listed Workman's father, Leonard Workman. The contract was signed, however, by Workman. A section of the contract titled "Client's Rights and Responsibilities" stated, "I have reviewed, understand and have received a copy of my rights' [sic] and responsibilities," and the blank following those words contained Workman's signature. A separate document, titled "A.S.A.P. Home Care Client Bill Of Rights And Responsibilities," provided, in relevant part: "As an A.S.A.P. Home Care client, you have the responsibility to . . . [m]eet your financial obligations to A.S.A.P. in a prompt/timely manner."

Another section of the contract provided: "I understand that I am responsible to [ASAP] for any and all charges not paid by a third party including any copayments, deductibles, coinsurance, lifetime maximums, or charges for non covered services. . . ." The contract contained several options for payment to ASAP. A checkmark appeared beside the option labeled "Private Insurance/Assignment of Insurance Benefits," which stated in part: "I hereby authorize payment directly to [ASAP] of any insurance benefits otherwise payable to me. . . . I understand that I am financially responsible to [ASAP] for charges not covered by this assignment. . . ."

Toward the end of the contract, the following words appeared in bold print:

> Client and/or Client representative acknowledges by signing this agreement that any services not covered by insurance or Medicare/Medicaid, must be paid within seven (7) days of receipt of billing invoice and that ongoing services may require an advance payment into [ASAP's] Escrow.

At the bottom of the contract were spaces for signatures from the "Client," the "Client Representative" and ASAP. The space marked "Client Signature" was left blank, but Workman signed the space marked "Client Representative Signature." In an adjacent blank labeled "Relationship to Client," she wrote "Daughter." Finally, beneath preprinted words stating, "If client did not sign, please state reason," Workman wrote: "Daughter has power of Atty over father's medical care."

ASAP provided nursing services to Workman's father for approximately three months, and it billed his health insurer $82,790.80 for those services. The insurer paid approximately $19,000, but denied coverage on the remainder. ASAP sued Workman for the remainder

plus interest and attorney fees, alleging breach of the Client Services Agreement.[2]

ASAP argues that the plain language of the Client Services Agreement, taken as a whole, personally obligated Workman to pay any portion of its bill that her father's health insurer did not pay. We cannot agree. Although Workman signed the contract, it is plain from the document that she did so in a representative capacity for her father. She signed in the space for "Client Representative," and she indicated that her father had not signed the contract because she had power of attorney over his medical care. Thus, she clearly indicated that she was acting as her father's agent and obligating *him* — not herself — to ASAP.[3] Contrary to ASAP's assertion, the fact that she also wrote "Daughter" on the form does not change this result.

ASAP argues that Workman was not legally authorized to act as her father's agent in signing the contract. At the summary judgment hearing, Workman submitted a document titled "Georgia Statutory Short Form Durable Power of Attorney for Health Care," which was signed by her father and which designated her brother and her as co-agents authorized to "make any and all decisions for [their father] concerning [his] personal care, medical treatment, hospitalization, and healthcare." This document copied verbatim the language of OCGA § 31-36-10 (a), the statutory health care power of attorney form.

ASAP argues that the document did not grant Workman "any financial powers for the payment of medical costs and expenses." But OCGA § 31-36-10 provides that the statutory health care power of attorney form

> shall . . . include the following powers, subject to any limitations appearing on the face of the form: . . . The agent is authorized to contract for any and all types of health care services and facilities in the name of and on behalf of the principal and to bind the principal to pay for all such services and facilities, and the agent shall not be personally liable for any services or care contracted for [or] on behalf of the principal. . . .[4]

---

[2] ASAP later added a fraud claim, alleging that Workman knew at the outset that her father had exhausted his home health care insurance benefits. The fraud claim, however, is not at issue here.

[3] See *Gigandet v. Lighting Galleries*, 191 Ga. App. 536 (382 SE2d 600) (1989) (authorized agent generally is not personally liable on contracts he signs on behalf of disclosed principal).

[4] OCGA § 31-36-10 (b) (3).

No limitations appeared on the face of the document. Thus, as her father's health care attorney-in-fact, Workman was empowered to obligate him to pay for the medical services she obtained on his behalf, and she was not personally liable to pay for those services.

ASAP complains that Workman never disclosed that she was acting as her father's agent. But Workman wrote on the contract that she had power of attorney over his medical care. ASAP also claims, inconsistently with the previous argument, that Workman misrepresented that she, alone, had a health care power of attorney, when in fact her father had granted a co-agency to her brother and her. Even if it was made, this asserted misrepresentation was not material. The issue is whether the power of attorney authorized Workman to sign the contract for her father, not whether a co-agent also could have done so. ASAP additionally asserts that Workman should have given it a copy of the power of attorney before the litigation began. Again, this is not material. The record shows without dispute that ASAP knew that Workman claimed to have power of attorney when she signed the contract; ASAP could have required verification of the agency had it so chosen.

ASAP contends that even if Workman acted in a representative capacity, the contract obligated her to personally guarantee her father's debts.[5] We find no such obligation. The contract repeatedly referred to "the client's" responsibility to pay ASAP, but it clearly specified that "the client" was Workman's father, not Workman. The only portion of the contract addressed to "the client's representative" was the boldface section stating, in part, that "Client and/or Client Representative acknowledges by signing this agreement that any services not covered by insurance or Medicare/Medicaid, must be paid within seven (7) days of receipt of billing invoice." Although this provision indicated that ASAP "must be paid," it did not specify which party must pay — the client, the client's representative (if any), or both. Reading this provision in conjunction with the rest of the contract, the most reasonable interpretation is that it was meant to advise the signer of the contract (either the client or his representative) that the client would be responsible for paying any unpaid balance.

Even if we determined that it was equally reasonable to interpret this provision as personally binding the client representative — and that the provision was therefore ambiguous[6] — we would reject

---

[5] See *Gigandet,* supra (despite general rule insulating authorized agent from liability on contracts signed for disclosed principal, agent may become party to contract that contains terms binding him personally).

[6] See *Salvatori Corp. v. Rubin*, 159 Ga. App. 369, 372 (1) (283 SE2d 326) (1981) (contract is ambiguous if it is "capable of conflicting interpretations").

that interpretation. When a contract is ambiguous, we apply the rules of contract construction to resolve the ambiguity.[7] One of those rules is that ambiguities must be construed against the drafter[8] — here, ASAP. Applying that rule, the contract did not personally obligate Workman. And because application of the rules of contract construction has resolved any ambiguity that might have been present, we do not consider ASAP's parol evidence that Workman intended to provide a personal guarantee.[9]

Finally, ASAP cites OCGA § 10-6-86, which provides, in relevant part, that "[a]n instrument signed by one as agent . . . , without more, shall be the individual undertaking of the maker. . . ." That statute makes an agent personally liable on a contract when she signs it, but either fails to indicate the principal's name or fails to indicate that she is signing in a representative capacity.[10] The statute does not apply where, as here, the contract specifies the agency, names the principal, and "is substantially in the name of such principal."[11]

Because the record shows without dispute that the contract did not obligate Workman to pay for ASAP's services, the trial court properly granted summary judgment to her on ASAP's breach of contract claim.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JANUARY 30, 2004.

*Melanie A. Brubaker*, for appellant.
*Kristopher Shepherd*, for appellee.

---

[7] *Eckerd Corp. v. Alterman Properties*, 264 Ga. App. 72, 76 (2) (589 SE2d 660) (2003).

[8] *Smith v. Persichetti*, 245 Ga. App. 357, 358 (537 SE2d 441) (2000).

[9] Compare *Empire Distributors v. George L. Smith II &c. Auth.*, 235 Ga. App. 742, 744 (509 SE2d 650) (1998) (extrinsic evidence admissible to explain ambiguity that remains after application of pertinent rules of contract construction).

[10] See, e.g., *Blayton v. Ford Motor Credit Co.*, 118 Ga. App. 517 (164 SE2d 262) (1968).

[11] *Harp v. First Nat. Bank of Reynolds*, 173 Ga. 768 (3) (161 SE 355) (1931).