### A10A1781. NW PARKWAY, LLC v. LEMSER et al.

(709 SE2d 858)

DOYLE, Judge.

This appeal involves a 20-year commercial property lease agreement, which was executed on July 20, 2004, between NW Parkway, LLC ("NW Parkway"), and West Asset Management, Inc. ("West"),[1] for a term beginning on August 1, 2004, and expected to continue until July 31, 2024. The trial court granted West's motion for partial summary judgment and declaratory relief. NW Parkway appeals, and we reverse for the reasons that follow.

> When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. On appeal, this Court conducts a de novo review of the law and the evidence.[2]

So viewed, the evidence below establishes that West leased certain property from NW Parkway. In early 2008, NW Parkway determined that West was not maintaining the property and obtained a professional inspection. The report indicated that the roof had deteriorated and would require replacement, rather than repair. Based on the inspector's report, NW Parkway concluded that immediate replacement of the roof and repair of other parts of the property were warranted, and it requested that West make the repairs in a letter dated February 27, 2008.

In a letter dated July 10, 2008, NW Parkway notified West of its alleged default for failure to perform roof repairs. After 30 days, NW Parkway sent a letter notifying West that it had failed to cure the

---

[1] Formerly Worldwide Asset Management.

[2] (Footnote omitted.) *Eckerd Corp. v. Alterman Properties, Ltd.*, 264 Ga. App. 72, 74 (589 SE2d 660) (2003).

default within the appropriate time frame.[3] On December 31, 2009, West sent a letter attempting to effect early termination under the lease's fourth special stipulation. This attempt was rejected in writing by NW Parkway on January 29, 2009, citing West's default under its obligation in the lease to pay expenses of the roof replacement.

When West refused to make the repairs, NW Parkway filed a complaint against West for damages, seeking the cost of the repairs to the roof, attorney fees, and a temporary restraining order ("TRO") allowing it to enter the property and repair the roof. In November 2008, the trial court granted NW Parkway an emergency TRO in order to replace the roof without making any determination as to which party would ultimately be responsible for covering the expense.

The third special stipulation of the parties' lease stated:

> This lease is a triple net lease and therefore in addition to the rent due to Lessor, as described in Exhibit "B", Lessee shall be responsible for and pay directly, on a timely basis, all expenses for the entire property and building, of any nature whatsoever during the term of this lease; with the exception that the Lessor shall be responsible for any expense directly associated with and actually incurred with respect to the concrete walls, concrete slab, and foundation. Lessee agrees to send a copy to Lessor of any property Tax Assessment Notice and also any Property Tax bill, within 5 days of receipt, provided however that Lessee shall pay the total Property Tax Bill when due.

The contract also contained a dispute-resolution clause, which stated:

> 45. Special Stipulations. The special stipulations (the "Special Stipulations"), if any, attached hereto as Exhibit "C" are hereby incorporated herein and made part thereof, and in the event they conflict with any of the provisions of this Lease, such Special Stipulations shall control.

One of the general terms of the lease addressed the issue of maintenance of the property, which stated:

> 8. Maintenance of Premises. Lessee acknowledges that the premises are in good order and repair. Lessee shall, at its

---

[3] The ninth special stipulation contained in the lease agreement provided that the Lessee would have 30 days to cure any non-monetary default.

own expense, and at all times, maintain the Premises in good, clean, and safe condition, including but not limited to the carpeting, interior walls, interior and exterior portion of all doors, windows, window frames, glass, and door closures and all electrical wiring, plumbing, water heaters, and air conditioning and heating installations installed by Lessee and shall surrender the same at the termination hereof, in as good condition as received, normal wear and tear excepted.

The lease also contained an early-termination clause in the fourth special stipulation:

4. Termination. Lessee shall be granted the option to an early termination by Lessor only at the end of the 5th, 10th, and 15th year of this lease; provided however, that for said option to be valid and effective, Lessee shall a) not default under any of the provisions of this lease, b) provide Lessor with written notice (90) days in advance of the end of the 5th, 10th, or 15th year of the lease, c) continue to pay rent for an additional (6) months beyond the end of that lease year, and d) vacate the premises within said (6) months (i.e. 5 years and 6 mo, 10 yrs and 6 mo, etc.) leaving the premises in good working order, normal wear and tear excepted.

The lease also contained a provision addressing waiver of default:

37. No waiver of default. No waiver by the parties hereto of any default or breach of any term, condition, or covenant of this Lease shall be deemed to be a waiver of any other breach of the same or any other term, condition, or covenant contained herein.

West filed an answer and counterclaims, alleging a count of fraud and deception for misrepresentation of the roof's condition, breach of contract, setoff and recoupment, declaratory judgment, negligence, and contribution or indemnification.

Thereafter, the trial court granted West's motion for partial summary judgment and declaratory relief. The trial court concluded that West had not defaulted on the lease because it did not have an obligation thereunder to replace the roof. In its order, the court relied on *Jacobi v. Timmers Chevrolet, Inc.*,[4] in determining that the lease

---

[4] 164 Ga. App. 198 (296 SE2d 777) (1982).

did not require West to replace the roof. Alternatively, the trial court determined that even if West had an obligation to replace the roof, NW Parkway had waived any right to claim breach because NW Parkway accepted subsequent rent payments.

1. As an initial matter, West has filed a motion to dismiss the appeal on the basis that the appeal is moot because the declaratory judgment from which NW Parkway appeals has been negated by West's move from the building. Because the trial court made legal determinations that West was not in default and was not responsible for replacing the roof, however, the appeal is not moot. The trial court's order states that: "This order is intended to resolve only whether West is entitled to terminate the lease agreement. Nothing in this order is intended to resolve whether West breached the lease agreement at issue, or what damages, if any, can be recovered for any such breach." Nevertheless, the legal conclusions reached by the trial court affected NW Parkway's rights to recover under the lease. Accordingly, West's motion to dismiss the appeal is denied.

2. NW Parkway argues that the trial court erred by ruling that West, as a matter of law, had no obligation to repair the property's roof. Specifically, NW Parkway argues that the third special stipulation[5] of the lease assigned all expenses to West except for expenses related to the concrete walls, concrete slab, and foundation of the building, which expenses were the responsibility of NW Parkway. NW Parkway also argues that to the extent paragraph 8 of the lease is in conflict with the third special stipulation, then the stipulation controls, as plainly stated in paragraph 45 of the contract. West, on the other hand, argues that the language of the contract requires it only to perform normal maintenance on the property.[6]

There are three steps to ascertain the intent of the parties when construing contracts:

> First, the court decides if the contract language is unambiguous, and if so the court enforces the contract's clear terms. Second, if the contract is ambiguous, the court must apply the rules of contract construction to resolve the ambiguity. And third, if the ambiguity remains after use of the construction rules, the meaning of the contract must be decided by a jury.[7]

"The first rule that courts must apply when construing con-

---

[5] "Lessee shall be responsible for and pay directly, on a timely basis, all expenses for the entire property and building, of any nature whatsoever during the term of this lease. . . ."

[6] Citing *Jacobi*, 164 Ga. App. at 198-199.

[7] (Punctuation omitted.) *Eckerd Corp.*, 264 Ga. App. at 76 (2).

tracts is to look to the plain meaning of the words of the contract,"[8] and "[i]t is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms."[9]

> Words generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties[.][10]

> Pursuant to the directive of OCGA § 13-2-2 (4), we favor a construction that upholds the contract in whole and in every part, and look at the whole contract in construing any part. If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred. Finally, when a provision specifically addresses the issue in question, it prevails over any conflicting general language.[11]

Based on the plain language of the lease, the trial court erred by determining that West was not obligated to repair the roof. The third special stipulation states: "Lessee shall be responsible for and pay directly, on a timely basis, *all expenses for the entire property and building, of any nature whatsoever* during the term of this lease . . . ."[12] Although the third special stipulation contains the limitation, "normal wear and tear excepted," when read in conjunction with the rest of the contract, this provision does not absolve West's responsibility for roof replacement that became necessary during its tenancy, as "roof replacement" falls within the normal meaning of *"all expenses for the entire property and building, of any nature whatsoever"* during the 20-year lease term. This conclusion is further supported by the remainder of the third special stipulation, which makes specific exceptions to this requirement by making the Lessor responsible "for any expense directly associated with and actually incurred with respect to the concrete walls, concrete slab,

---

[8] *Ga. Real Estate Properties v. Lindwall*, 303 Ga. App. 12, 14 (1) (692 SE2d 690) (2010).

[9] (Punctuation omitted.) *Northwest Plaza, LLC v. Northeast Enterprises*, 305 Ga. App. 182, 189 (1) (699 SE2d 410) (2010).

[10] OCGA § 13-2-2 (2).

[11] (Citations and punctuation omitted.) *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 818 (1) (584 SE2d 41) (2003).

[12] (Emphasis supplied.)

and foundation." Thus, had the parties wished to exclude from West's responsibility any expense related to the roof, they could have included the roof in the limited list of portions of the building for which NW Parkway retained responsibility to maintain.

Again, based on its reading of *Jacobi*, the trial court found that the language of paragraph 8, which describes maintenance duties of the lessee, to mean that West was not required to replace the roof. The court determined that roof replacement did not fit the definition of maintenance as required by that portion of the contract. Nevertheless, because the plain language of the contract contains in paragraph 45 a stipulation supremacy provision, the third special stipulation would control over paragraph 8 of the lease in the event that the provisions are read to conflict. Such a reading is not necessary, however, because nothing in paragraph 8 limits the language of the third special stipulation, and the paragraph simply describes the upkeep West was expected to perform throughout the property as a matter of course.

Based on the facts included in the *Jacobi* decision, which the trial court relied upon heavily in determining that West was not responsible for the roof repair, it is not dispositive to the outcome of this case. The lease in *Jacobi* did not contain a provision similar to the third special stipulation contained in the lease at hand.[13] Moreover, the parties in that case were contracting for the use of a parking lot, which happened to contain a dilapidated building that had not been used for some time.[14] Thus, capital improvements to the building would not have been contemplated by the parties at the time the lease was written, and the maintenance clause, similar to paragraph 8 of this lease, could not be construed to include such improvements.

Accordingly, based on the plain language of the lease, the trial court erred by finding that West was not obligated to replace the roof and by basing its determination that West was not in default upon this finding.

3. NW Parkway also argues that the trial court erred by alternatively finding that even if West had an obligation to repair the roof, NW Parkway waived its rights under the lease by accepting subsequent rent payments from West. We agree.

A party may by his conduct waive a legal right but where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an

---

[13] See *Jacobi*, 164 Ga. App. at 198.
[14] See id.

intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible.[15]

"The question whether the parties' mutual conduct caused a waiver and effected a quasi-new agreement ordinarily is a question for the jury."[16]

Although acceptance of rent often constitutes a waiver of the lessee's default and reinstatement of the lease, the cases in which this rule has been applied involved a lessor's waiver of *its* early termination rights.[17] Here, however, the early termination clause benefitted West, not NW Parkway, and the clause contained four conditions precedent for the option to early termination to apply. Thus, West's failure to comply with the third special stipulation, i.e., failure to repair the roof, constituted default, which prevented West from timely complying with the terms of the optional early termination clause in order to terminate at the five-year point.[18] To hold otherwise would render meaningless the conditions precedent listed in the early termination clause. Accordingly, the trial court erred by finding that by accepting rent, NW Parkway waived its right to deny West's attempt to early terminate at the fifth year of the lease.

4. Finally, NW Parkway argues that the trial court erred by using declaratory judgment to effectively grant complete summary judgment to West. Based on the holdings in Divisions 2 and 3 of this opinion, this enumeration is moot.

*Judgment reversed. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 24, 2011 —
RECONSIDERATION DENIED APRIL 11, 2011 — ▮

*John F. Salter, Jr., Allison B. Salter*, for appellant.
*Bondurant, Mixson & Elmore, M. Jerome Elmore, Timothy S. Rigsbee, Michael A. Caplan*, for appellees.

---

[15] (Punctuation omitted.) *Eckerd Corp.*, 264 Ga. App. at 75 (1).

[16] (Punctuation omitted.) Id. at 76 (1).

[17] See, e.g., *C & A Land Co. v. Rudolf Investment Corp.*, 163 Ga. App. 832, 834 (296 SE2d 149) (1982); *Gay v. American Oil Co.*, 115 Ga. App. 18 (153 SE2d 612) (1967); *Yates v. Farmer*, 102 Ga. App. 570 (117 SE2d 211) (1960).

[18] See *Piedmont Center 15, LLC v. Aquent, Inc.*, 286 Ga. App. 673, 677 (649 SE2d 733) (2007).