**THIRD DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

**February 8, 2023**

# In the Court of Appeals of Georgia

A22A1403. GLEATON & ASSOCIATES, INC. v. CORNELIUS.

PHIPPS, Senior Appellate Judge.

Defendant Gleaton & Associates, Inc. appeals from a trial court order granting in part and denying in part its motion for summary judgment in this suit involving, among other things, negligence per se. Gleaton & Associates claims that the court erred by failing to grant it summary judgment on plaintiff LaQuita Cornelius's claim that it knowingly and willingly made a false statement in a dispossessory warrant in violation of OCGA § 44-7-58. For the reasons that follow, we agree and reverse.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011). We review an award of summary judgment de novo, viewing the evidence and all reasonable inferences

drawn from the evidence in the light most favorable to the nonmoving party. *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). "In so doing, we owe no deference to the trial court's legal analysis or legal conclusions." *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 477 (1) (574 SE2d 585) (2002).

So viewed, the evidence shows that Cornelius leased a house (the "property") from its owner for a term of March 4, 2017, to March 30, 2018, and subsequently renewed the lease for a second term from April 1, 2018, to March 31, 2019. Gleaton & Associates, also operating under the name Elite Realty Group, managed the property. Under a heading entitled "Due Date for Rent," provision (A) (3) (b) of the applicable lease stated that "[r]ent shall be paid no later than by 6 m.[sic] on the 5th day of the month ('Due Date')" or the tenant would be assessed a late fee (hereinafter "provision 3"). However, the lease also contained "Special Stipulations," the second of which stated:

> All parties acknowledge that rent is due on the first day of each month. All parties acknowledge that if rent is not paid by 6:00 pm on the 5th day of the month tenant shall be assessed late fees in the amount of $125.00 plus $10.00 per day for each day thereafter until all fees assessed to bring [the] account current are paid in full.

(Hereinafter "special stipulation 2".) According to the special stipulations page, if the special stipulations conflict with any preceding paragraph of the lease, the special stipulations "shall control."

The lease further indicated that rent was due "on or before the Due Date" and that the landlord had no obligation to accept rent paid after the due date. In addition, the landlord was authorized by the lease to "file a dispossessory action against Tenant if any rent or other fees and charges owed by Tenant [were] not paid in full by the Due Date." According to the lease, the landlord could terminate the lease early by giving 60 days' notice or terminate immediately if default occurred. Default occurred if, for example, the tenant failed to abide by the terms and conditions of the lease or failed to timely pay rent.

It is undisputed that the owner knew Cornelius was interested in purchasing the property and, in December 2018, mentioned to her that he would be selling the property. Both parties recount a number of disputed facts occurring between that time and February 4, 2019, but those facts are irrelevant to the issues in this appeal and therefore are not included here. On February 4, 2019, Gleaton & Associates filed a dispossessory action in magistrate court, averring that Cornelius "fail[ed] to pay rent

now due [f]rom 2/1/2019 [t]o 2/28/2019." Gleaton & Associates voluntarily dismissed the dispossessory action on March 4, 2019, and Cornelius left the property the next day.

On April 8, 2019, Cornelius filed a complaint, which she subsequently amended, against Gleaton & Associates, Elite Realty Group, Calvin Gleaton individually, and the property owner, alleging claims for the negligent filing of a dispossessory affidavit, violation of the Georgia Fair Business Practices Act, and defamation. The defendants filed motions for summary judgment.[1] The trial court granted summary judgment to the defendants on Cornelius's Georgia Fair Business Practices Acts and defamation claims, but denied summary judgment on her negligence claim and request for punitive damages and attorney fees. Gleaton & Associates appeals from this order.[2]

---

[1] The property owner and Elite Realty Group were dismissed from the action prior to the trial court's summary judgment ruling.

[2] All claims against Calvin Gleaton personally were disposed of by the trial court's grant of summary judgment, and Cornelius has not cross-appealed from that decision. Accordingly, Gleaton & Associates remains the only defendant in the action and is the sole appellant before this Court.

1. Gleaton & Associates argues that the trial court erred by failing to grant it summary judgment on Cornelius's negligence per se claim based on OCGA § 44-7-58.[3] We agree.

"Under Georgia law, the violation of a statute, ordinance, or mandatory regulation may constitute negligence per se." *Combs v. Atlanta Auto Auction*, 287 Ga. App. 9, 12 (2) (650 SE2d 709) (2007). In analyzing whether negligence per se occurred, the trial court first must determine that there has been a violation of a statute, ordinance, or mandatory regulation by the defendant. See *Norman v. Jones Lang LaSalle Americas*, 277 Ga. App. 621, 628 (2) (b) (627 SE2d 382) (2006). If so, then the court must (i) consider whether the harm complained of was the harm the statute was meant to protect against and whether the person harmed fell into the class of persons the statute was intended to protect, and (ii) determine whether a causal connection exists between the negligence per se and the injury. See id.

_____

[3] Cornelius and the trial court both acknowledge that Cornelius's negligence claim is one of negligence per se. Although a denial of summary judgment generally is not directly appealable, see OCGA § 5-6-34 (a), (b), this appeal is properly before us because the trial court's order effectively granted summary judgment to Cornelius on elements of her negligence per se claim, and "[a]n order granting summary judgment on any issue or as to any party shall be subject to review by appeal." See OCGA § 9-11-56 (h); see also *905 Bernina Avenue Cooperative v. Smith/Burns LLC*, 342 Ga. App. 358, 360 (802 SE2d 373) (2017).

The statute at issue in this case, OCGA § 44-7-58, provides as follows: "Anyone who, under oath or affirmation, knowingly and willingly makes a false statement in an affidavit signed pursuant to Code Section 44-7-50 . . . shall be guilty of a misdemeanor."[4] Thus, the ultimate question on this issue here is whether Gleaton & Associates' statement in the dispossessory affidavit that Cornelius "fail[ed] to pay rent now due," was a false statement knowingly and willingly made by Gleaton & Associates.[5]

Gleaton & Associates contends it did not violate OCGA § 44-7-58 because the lease agreement required payment on the first day of the month and it filed the dispossessory affidavit stating that Cornelius had "fail[ed] to pay rent now due" on the fourth day of the month. In support of this argument, Gleaton & Associates relies on special stipulation 2 attached to the lease, noting that (i) the stipulations page indicated that the special stipulations, if conflicting with any preceding paragraph,

---

[4] OCGA § 44-7-50 addresses, among other subjects, an owner's demand for possession and the procedure upon a tenant's refusal of possession.

[5] We note that the trial court's finding that "the dispossessory statute was violated" is irrelevant in the context of this negligence per se case, which simply addresses whether the sworn dispossessory affidavit made by Gleaton & Associates was knowingly and willingly false and not whether the dispossessory action itself was improper.

6

"shall control," and (ii) special stipulation 2 read, "[a]ll parties acknowledge that rent is due on the first day of each month."

Cornelius, on the other hand, contends that Gleaton & Associates' sworn statement that she "fail[ed] to pay rent now due" was knowingly and willingly false because (i) the "Due Date" was defined in provision 3 of the lease as "the 5th day of the month," (ii) the actual date for the Due Date (the "5th") in provision 3 was specifically typed on an assigned line of the lease, and (iii) both provision 3 and special stipulation 2 of the lease allowed acceptance of rental payments through the fifth of the month. Accordingly, Cornelius asserts that Gleaton & Associates, knowing rent could be paid through the fifth of the month, falsely swore out the dispossessory affidavit on the fourth of the month.

The trial court found that Gleaton & Associates violated the statute when it filed the dispossessory affidavit on February 4, 2019, because "rent was not yet past due." This conclusion is erroneous.

"[T]he construction of the provisions of a lease is generally a question for the court to determine as a matter of law." *Stern's Gallery of Gifts v. Corporate Property Investors*, 176 Ga. App. 586, 593 (4) (337 SE2d 29) (1985) (citation and punctuation omitted); see also OCGA § 13-2-1. Such construction involves a three-step process.

7

First, the court decides if the contract language is unambiguous, and if so the court enforces the contract's clear terms. Second, if the contract is ambiguous, the court must apply the rules of contract construction to resolve the ambiguity. And third, if the ambiguity remains after use of the construction rules, the meaning of the contract must be decided by a jury. The first rule that courts must apply when construing contracts is to look to the plain meaning of the words of the contract[.]

*NW Parkway v. Lemser*, 309 Ga. App. 172, 175 (2) (709 SE2d 858) (2011) (citations and punctuation omitted). "A word or phrase is ambiguous when its meaning is uncertain and may fairly be understood in more ways than one." *Atlanta Dev.*, 258 Ga. App. at 477-478 (1). "The existence or non-existence of an ambiguity is itself a question of law for the court[,]" and "[l]anguage which is unambiguous will not be construed as ambiguous based on extrinsic circumstances." *Kusuma v. Metametrix*, 191 Ga. App. 255, 256 (2) (381 SE2d 322) (1989) (citation and punctuation omitted). "Where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible." *Stern's Gallery of Gifts*, 176 Ga. App. at 593 (4). While provision 3 and special stipulation 2 in the applicable lease here conflict, there is no ambiguity in the plain meaning of the words used in the provision or stipulation.

Provision 3 of the lease stated that the due date for rent was no later than 6:00 p.m. "on the 5th day of the month[,]" whereas special stipulation 2 provided that "[a]ll parties acknowledge that rent is due on the first day of each month." This special stipulation is "clear, unambiguous, and capable of only one reasonable interpretation," *Stern's Gallery of Gifts*, 176 Ga. App. at 593 (4), and the preface to the special stipulations page unambiguously provided that the stipulations, "if conflicting with any . . . preceding paragraph . . . shall control." Because special stipulation 2 directly conflicted with preceding provision 3 of the lease, the stipulation controls, and therefore rent was due on the first day of each month. See *NW Parkway*, 309 Ga. App. at 177 (2) (finding that because a contract contained a stipulation supremacy provision, the special stipulation controlled over a paragraph in the lease if the provisions were read to conflict); accord *Grier v. Brogdon*, 234 Ga. App. 79, 80-81 (2) (505 SE2d 512) (1998) ("Although the provisions concerning the disposition of earnest money in the event of [the purchaser's] default conflict, ambiguity evaporates due to the express provision that in the event of a conflict, the stipulations control."); *Taylor v. Dunaway*, 79 Ga. App. 754, 758 (54 SE2d 381) (1949) ("Since there is clearly a conflict between paragraph 4 of the lease and a

9

provision in the special stipulation clause, the latter will control, as expressly stated in the introduction of the special stipulation paragraph.").

Contrary to Cornelius's assertions, the language of the lease agreement in this case did not contain a "grace period" for rent payments through the fifth of the month; the controlling stipulation specifically stated that "rent [was] due on the first day of each month." See generally *Krupp Realty Co. v. Joel*, 168 Ga. App. 480, 481 (1) (309 SE2d 641) (1983) (finding in a usury case that a late payment or additional charge may be required "when the rent due on the first of the month is received after the fifth."). Accordingly, the trial court erred by determining that "rent was not yet past due" when Gleaton & Associates filed the dispossessory affidavit on February 4, 2019. Gleaton & Associates' sworn statement in the dispossessory warrant that Cornelius "fail[ed] to pay rent now due" was not a false statement and, therefore, cannot be used as a basis for a negligence per se claim under OCGA § 44-7-58.

Cornelius mentions in passing that the dispossessory affidavit was false because (i) it was brought on behalf of the owner, who was not consulted first, and (ii) the amounts indicated in the prayer for relief of the dispossessory warrant were incorrect. Cornelius's appellate brief, however, contains no citation of authority or meaningful legal argument demonstrating that these assertions, even if true, constitute

10

a violation of OCGA § 44-7-58. Accordingly, any claim of error with respect to these arguments is deemed abandoned. See *de Castro v. Durell*, 295 Ga. App. 194, 204 (3) (671 SE2d 244) (2008) (deeming an enumeration of error abandoned where the appellant failed to cite any legal authority in support thereof); see also Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Gresham v. Harris*, 349 Ga. App. 134, 138 (1), n. 9 (825 SE2d 516) (2019) (legal analysis "is, at a minimum, a discussion of the appropriate law as applied to the relevant facts") (citation, punctuation, and emphasis omitted). Moreover, even if Cornelius did not abandon these arguments, they fail. First, Gleaton & Associates designated in the dispossessory warrant that it was filing "for" the owner and acting as an agent. Pursuant to the management agreement with the owner, Gleaton & Associates possessed the authority to bring the dispossessory action on behalf of the owner. In addition, the prayer for relief in the dispossessory warrant, like a prayer for relief in a complaint, is not an actual part of the sworn document, but simply a request for relief and damages sought. See *Drug Emporium v. Peaks*, 227 Ga. App. 121, 128 (2) (c) (488 SE2d 500) (1997) ("[T]he prayer is not an allegation in the complaint which requires an answer . . . and is not part of plaintiffs' cause of action.").

In an attempt to avoid the plain language of special stipulation 2, Cornelius asserts that provision 3 in the lease should control when rent was due because that provision included a typed due date, which prevails over a printed one when they conflict. Indeed, it is well settled that "provisions which are specially inserted by a party take precedence over the printed provision of a form contract." *Benedict v. Snead*, 271 Ga. 585, 586 (519 SE2d 905) (1999) (citations and punctuation omitted); see also *Taylor*, 79 Ga. App. at 758 (explaining that "typed provisions will prevail over printed matter when they conflict"). Cornelius's argument, however, is unavailing because special stipulations to a contract are considered typewritten provisions unique to each contract rather than pre-printed forms.[6] See *Grier*, 234 Ga. App. at 81 (2) (implying that a tailored stipulation in a preprinted form contract constituted a typewritten provision); *Patellis v. 100 Galleria Parkway Assoc.*, 214 Ga. App. 154, 155 (2) (447 SE2d 113) (1994) (indicating that typewritten special stipulations prevailed over conflicting printed provisions).

---

[6] Within this argument, Cornelius further asserts that the specifically defined "Due Date" in provision 3 of the lease should control over the more general special stipulation which does not define the "Due Date." However, "[n]o rule of construction mandates that an unnecessary duplication of a word or phrase obviates the otherwise apparent contractual intent of the parties." *Benedict*, 271 Ga. at 586. The language in the stipulation unequivocally stated that "rent is due on the first day of each month." This statement was sufficient to define the "Due Date" for rent payments in the lease.

Cornelius also argues that Gleaton & Associates waived its right to demand rent be paid on the first of each month by "continuously accepting rent after the first of each month," thus creating a "quasi-new agreement." This argument likewise fails. First, a quasi-agreement could not have existed because the lease specifically contained a no-waiver clause:

> Any failure of Landlord to insist upon the strict and prompt performance of any covenants or conditions of this Lease or any of the Rules and Regulations set forth herein shall not operate as a waiver of any such violation or of Landlord's right to insist on prompt compliance in the future of such covenant or condition, and shall not prevent a subsequent action by Landlord for any such violation. No provision, covenant or condition of this Lease may be waived by Landlord unless such waiver is in writing and signed by Landlord.

Moreover, while repeatedly accepting late payments may "create[] a factual issue as to whether a mutual departure from the payment terms of the lease created a quasi-new agreement to accept late rent payments," whereby a jury must decide whether rent was timely paid under the new quasi-agreement adopted by the parties, see *Parkside Center v. Chicagoland Vending*, 250 Ga. App. 607, 612 (3) (552 SE2d 557) (2001) (over the course of the lease, the lessor accepted repeated late payments, up to ten days past the due date), that did not occur here.

13

Cornelius makes a blanket statement in her appellate brief that Gleaton & Associates had a "history of accepting rent by the 5th, or even after," yet she fails to point to evidence in the record supporting this allegation, and she therefore does not demonstrate the repeated acceptance of rent payments by Gleaton & Associates sufficient to create a new quasi-agreement regarding when rent was due. In addition, the record is devoid of any evidence that Gleaton & Associates waived special stipulation 2 in the lease agreement or entered into a new quasi-agreement regarding when rent was due. See *Birch Property Partners v. Simpson*, 364 Ga. App. 315, 327 (5) (874 SE2d 814) (2022) ("The burden of proof lies with the party asserting waiver.") (citation and punctuation omitted).

In a final attempt to demonstrate that the dispossessory affidavit stating she "fail[ed] to pay rent now due" was false, Cornelius argues that she attempted to pay rent to Gleaton & Associates, but was unable to do so because Gleaton & Associates turned the online portal off and refused her in-person rent payment. However, the record shows that Cornelius sent an e-mail to Gleaton & Associates at 6:36 p.m. on February 4, 2019, stating that she was unable to make an online payment, and she delivered a check, which was subsequently returned, to Gleaton & Associates for the rent payment on February 5, 2019. Both attempts were made after the February 1,

14

2019 due date for rent and the February 4, 2019 filing of the dispossessory warrant. Moreover, provision (B) (3) of the lease agreement provided that "Landlord may, but shall have no obligation to accept any rent paid after the Due Date." Cornelius's argument in this regard is unavailing.

Because the controlling special stipulation in the lease agreement provided that "rent is due on the first day of each month," and because Gleaton & Associates filed the dispossessory warrant on February 4, 2019, before Cornelius paid her February rent, the sworn statement in the dispossessory warrant that Cornelius "fail[ed] to pay rent now due" was not false and does not support a negligence per se claim under OCGA § 44-7-58. The trial court erred by refusing to grant summary judgment to Gleaton & Associates on this claim, and we therefore reverse the trial court's judgment. In addition, because Cornelius's negligence per se claims fails and it was her only remaining substantive claim, her derivative claims for punitive damages and attorney fees also must fail. See *Matthews v. Tele-Systems*, 240 Ga. App. 871, 874 (4) (525 SE2d 413) (1999). We therefore reverse the trial court's denial of summary judgment on these claims as well.

15

2. Given our holding in Division 1, we need not reach the merits of Gleaton &

Associates' remaining claims.

*Judgment reversed. Barnes, P. J., and Doyle, P. J., concur*.